## JIM BAXTER *v.* THE STATE.

1. CRIMINAL LAW. *Practice. Issue.* When the record shows the defendant was brought to the bar of the court in custody of the sheriff, was arraigned upon the indictment and plead not guilty as charged, and for his deliverance put himself upon the country, whereupon to try the said defendant upon his plea of not guilty, came a jury of good and lawful men, etc., and duly elected, etc., "to well and truly try" said defendant upon his plea of not guilty to said charge in the indictment, etc. *Held,* that though informal, it showed a substantial issue.

2. SAME. *Evidence. Dying declarations.* When the deceased, a feeble old woman, was violently assaulted, on Saturday night, and was unable to articulate for several days, and on the next Thursday expressed her conviction that she would die, and afterward made declarations as to the identity of the assailant, and lived sixteen days after she was assaulted, it appearing she thought all the time she would die. *Held,* the declarations were competent evidence.

3. SAME. *Practice.* Exceptions to evidence must be made in the trial court, and must be specific, or they will not be regarded in the Supreme Court. The rule is the same in civil and criminal cases.

4. EVIDENCE. A party who elicits illegal evidence can not object to it if responsive to the questions.

5. SAME. *Charge of court. Province of jury.* It was not error for the trial judge to instruct the jury that they should give the dying declarations of the deceased the same force as testimony as if she had given her sworn statement in the form of a deposition, if they believed the witnesses' statements as to what she said.

FROM WILSON.

Appeal in error from the Circuit Court of Wilson county. ROBERT CANTRELL, J.

R. E. THOMPSON and J. M. QUARLES for Baxter.

ATTORNEY-GENERAL LEA and W. H. WILLIAMSON for the State.

DEADERICK, C. J., delivered the opinion of the court.

The defendant was indicted and convicted in the circuit court of Wilson county, of murder in the first degree, and sentenced to be hung.

He·has appealed in error to this court, and has been defended most ably and earnestly.

Several errors are assigned for which it is insisted the judgment should be reversed.

The indictment, in formal language, charges the defendant with the murder of Martha Lane, in said county of Wilson, and the first objection is that the trial was had without an issue. But the record·shows that defendant was brought to the bar of·the court, in custody of the sheriff, was arraigned upon the in-·dictment, and plead not guilty as charged, and for his deliverance put himself upon the country; where-upon, to try the said defendant upon his plea of not guilty, comes a jury of good and lawful men, etc., and duly elected, etc., "to well and truly try said de-fendant upon his plea of not guilty to said charge in the indictment," etc.

Then follows the entries respiting the jury, etc., until the verdict was rendered, October 9, 1885.

This, we think, a substantial issue, and the jury were sworn to try the defendant upon his plea of not guilty to said charge in the indictment. It is very manifest, though not in the usual language, that the jury was sworn to try the issues made by the charges

in the indictment, and the defendant's plea of not guilty thereto. *State* v. *Smith*, Peck, 131; 13 Lea, 258.

It is also objected that the "dying declarations" of deceased were improperly admitted. The deceased was a feeble old lady, and at the time of the fatal assault, between 8 and 9 o'clock at night, was alone, at her home in Lebanon. She was stricken several blows on the head by a rock, weighing three or four pounds, held in the hand of her assailant, and her skull was badly fractured.

For several days she was unable to give an intelligible account of the assault. Within fifteen minutes or half an hour after she was stricken, neighbors and a physician were at her bedside. Her physician stated that he regarded her wounds as fatal, but at first did not regard the case as utterly hopeless. She was unable to articulate for several days. The blows were inflicted on Saturday night, and on the next Thursday thereafter she expressed her conviction that she would die. She lived about sixteen days after the wounds were inflicted of which she died.

His Honor, when the dying declarations were offered, caused the jury to retire, and then examined some six witnesses, who proved the condition of deceased, and her declarations to them, severally, that she could not recover, and would die.

Three of these witnesses, including her physician, were allowed to prove the declarations of the deceased before the jury. As to these three witnesses, all the declarations proved by them were made after her declarations to them and to others that she could not

live. To some she said repeatedly in the same conversation, that she could not get well, that she would die, and similar expressions, and never expressed any hope of recovery.

In the case, *Anthony* v. *The State*, Meigs' R., 265, it was urged, as in this case, that the "dying declarations" were inadmissible upon two grounds, first, because contrary to the bill of rights, and also because there was not sufficient evidence to show that deceased knew or thought herself to be in imminent danger of death. In the case cited, the court says: "The principle asserted in the bill of rights, and that as to the admissibility of dying declarations, are coeval rules of the common law. The first was inserted in the bill of rights because it had been maintained with difficulty against the crown, by the popular party. The other had never been debated between them, and hence was omitted." The court adds: "That our view of this question is correct, is made manifest by the fact that after more than forty years from the adoption of our first declaration, this argument, against the admissibility of dying declarations on account of its being contrary to the bill of rights, is for the first time made, so far as we are aware, in our courts of justice."

The case of *Anthony* v. *The State*, was decided in 1838, and for nearly fifty years since our courts have repeatedly recognized it as authority.

The admissibility of dying declarations is one of several exceptions to the general rule rejecting hearsay evidence. They are admitted upon the principle that they are made *in extremis*, when the party is at the

point of death, and every hope of this world gone, every motive to falsehood silenced, and the mind influenced by the most powerful considerations to speak the truth: 1 Greenl. Ev., sec. 156.

This sense of impending death may be shown by the express language of deceased, or be inferred from the evident danger, or by the opinions of physicians, or other attendants, as in *Anthony* v. *The State.* It is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible: 1 Greenl. Ev., sec. 158. Such are the rules governing such cases, as held by other authors, and by our own and other decisions. Any hope of recovery, when declarations are made, renders them inadmissible.

Tested by these rules, we think the declarations in this case were properly admitted.

But it is objected that parts of said declarations not falling within the rule that the declarations of the deceased are admissible only to those things which the declarant would have been competent to testify, if sworn in the cause, should have been excluded.

This is a correct statement of the rule. Such declarations must speak, in general, to facts only, and not to mere matters of opinion, and must be relevant to the issue: 1 Greenl. Ev., sec. 159.

His Honor, in order to ascertain the admissibility of the dying declarations, in the absence of the jury, examined six witnesses. This has been heretofore held to be a commendable practice in such cases. The defendant, upon the announcement of the court

that he would allow three of those witnesses to testify
as to the dying declarations, excepted to the ruling
of the court, without specifying the ground of the ob-
jection. The jury was then recalled, and Dr. Kidder,
one of the three witnesses, allowed to testify before
them, as to dying declarations. He states how, by
signs and pointing, the deceased sought to inform him
who assaulted her, before she was able to speak so
as to be understood; and after he had ascertained
the locality indicated by her, and that it was a ne-
gro who assaulted her, he obtained the names of sev-
eral, and their names being repeated to her, she an-
swered no, until defendant's name was given, and then
she said, "Yes."

Defendant was arrested and brought into her pres-
ence, and she recognized him, and said he was the
one. Defendant denied it, and Mrs. Lane replied:
"Yes, you did, and you know it." Defendant was
then removed, and Mrs. Lane said, "Jim knew he
did it. He looked like it."

After a lengthy cross-examination, this recital ap-
pears: "Defendant excepted to declaration of Mrs.
Lane, as proved by this witness, but the court over-
ruled the exception, and permitted the statement to
go to the jury."

It is not seriously insisted that there was any in-
admissible testimony by this witness, except the de-
claration of Mrs. Lane, after Jim left the room: "Jim
knew he did it. He looked like it."

Dinah Roberson testified as to Mrs. Lane's declara-
tion that defendant struck her.

On cross-examination, witness said: Some one asked in presence of Mrs. Lane, if Jim had any folks here, and she replied, "No; he is nothing but a loafer." And at the end of this witness' testimony, a similar objection to that taken to Dr. Kidder's testimony appears.

Mrs. Yeargin, the last of the three, stated that Mrs. Lane told her Jim Baxter struck her, and said, "I wish you had been here Sunday to see Jim Baxter, the one that hit me. He would not look at me."

No exception was taken to the evidence of the witness, and in such case, no exception can be taken to it in this court. The rule is the same in civil and criminal cases: 9 Yerg., 410; 1 Heis., 223; 10 Yerg., 346; 7 Cold., 181-2.

The objectionable evidence in the testimony of Dinah Roberson, was elicited by defendant on cross-examination, and it is equally well settled that a party who elicits illegal evidence cannot object to it, unless it is shown not to have been responsive to the question.

Where the record, or the question itself, shows the answer is not responsive, and is illegal, it may, and should be, stricken out by the court, at the instance of the party examining the witness. But it is otherwise if the answer is elicited by the examining party, and it is not shown to be not responsive, and no motion is made to exclude it on this ground: 2 Swan, 473-4; *Ibid*, 579-80; 7 Baxter, 141-2, and this is upon the presumption in favor of the regularity and correctness of the proceedings below, and upon

the duty of appellant to put the court in error before . he can have a reversal of the judgment. The objectionable part of Dr. Kidder's testimony is, that after Mrs. Lane had told defendant he struck her, and after he had left her presence, she said, "Jim knew he did it. He looked like it." She had just told him he struck her, and he knew it. But, conceding that it would not have been competent for Mrs. Lane to testify in court, if she had lived, what she said after defendant had left her presence, was the refusal of the court to exclude all or any of the declarations proved by Dr. Kidder, upon the exceptions taken, error?

We think not. The objection is general, applying to every declaration proved. Beyond question, nearly all those declarations were strictly admissible. The objectionable part is but an emphatic reiteration of what was properly proved, and is admissible, unless properly objected to.

Mr. Greenleaf says: "It is also to be noted as a rule, applicable to all objections to the reception of evidence, that the ground of objection must be distinctly stated at the time, or it will be held vague and nugatory: 1 Greenl. Ev., sec. 421.

In a case in 1 Swan, incompetent evidence was admitted without objection; counsel afterward asked the court to exclude *all* testimony as to damages, except for actual expenses, etc. This court said this was properly refused, because the request embraced much competent evidence. This court adds, "If the counsel had moved the court to exclude all illegal

testimony admitted without objection, during the progress of the trial, the motion would have been more definite and certain, yet still too vague and uncertain to put the court in the wrong. To have this effect, the illegal evidence objected to must be distinctly stated and indicated ": 1 Swan, 174, 175.

Here the court was asked to exclude legal and illegal evidence all together, which was properly refused.

In the case at bar, the exception was to all the evidence of deceased's declarations; and this taken at the close of the examination, and no doubt meant chiefly to apply to those declarations which we have held were admissible.

To hold such an indefinite and general objection sufficient to impose upon the trial judge the duty of sifting every witness' testimony, after it is given, to separate a grain of chaff from a bushel of wheat, would be to impose upon the judge the duty of the party, or his counsel. They may admit illegal evidence, if they don't choose to object. If they do not want to admit it, they should object as soon as it is offered, or its illegality appears. At least, if they omit to make objection until the examination of the witness is complete, they should point out the parts of the evidence excepted to, if it is not all illegal, or in some way indicate with reasonable certainty the part objected to.

It is also objected that the court invaded the province of the jury in instructing them as to the *weight* of the dying declarations.

The court said to the jury, Mrs. Lane's testimony goes to you, through others, and should have the *same force as testimony,* as if she had given her sworn statement in the form of a deposition; that is if you believe the witness' statement as to what she said. The court added: Mrs. Lane's statements are competent testimony, and it is for you to say what credit is due to her statements as detailed by other witnesses.

The court only meant that the declarations were to be received as if sworn to, as a deposition is, and this is just the light in which they are estimated. The witness' apprehension of impending death being equivalent to an oath, and the amount of credit due to them was left to the jury under proper instructions.

It is also insisted that the court erred in admitting Bush's testimony in rebuttal, he not having been under the rule with the other witnesses, although defendant, it is said, insisted that he should be required to retire from the court room while other witnesses were examined. His Honor refused to put this witness under the rule, because his evidence was rebutting, and he was at the time an officer of the court.

It does not appear in this case that any affidavit was made for the rule. But if it had been, it has been held by this court that the right to exclude the witness for disobedience to the order, is within the discretion of the court: 4 Lea, 430, citing authorities. We are of opinion that the dying declarations of Mrs. Lane were properly admitted, and that they fully identified the defendant as the person who

made the fatal assault upon her, and that in this she is corroborated by another witness to whom Baxter admitted the commission of the crime.

The result is that there is no error in the record for which the judgment should be reversed, and it will be affirmed.