## Al. Ferguson v. The State.

### (*Jackson.* April Term, 1917.)

1. **CRIMINAL LAW. Credibility. Verdict of jury.**
   In a criminal prosecution, the verdict of the jury determines the credibility of witnesses. (*Post, pp.* 109, 110.)

2. **HOMICIDE. Evidence. Admissibility. Good character.**
   In a prosecution for homicide, where accused pleads self-defense, evidence of the good character of deceased as a peaceable and law-abiding man is admissible, regardless of whether the question is opened by the accused. (*Post, pp.* 110, 111.)

Case cited and approved: Rippy v. State, 39 Tenn., 217.

---

### FROM OBION.

---

Error to the Circuit Court of Obion County.— Jos. E. Jones, Judge.

C. N. Lannom and H. C. Stanfield, for plaintiff in error.

W. H. Swiggart, Jr., Assistant Attorney-General, for the State.

Mr. Justice Lansden delivered the opinion of the Court.

The plaintiff in error was convicted of murder in the second degree for the killing of Will Robinson. The

deceased was marshal of the town of South Fulton, Tenn., at the time of his death. The plaintiff in error had previous to the killing been engaged in the sale of intoxicating liquors in Fulton, Ky. While thus engaged he was involved with the officers of the law in a number of cases, and was indicted in that State. Afterwards he moved to Tennessee. The line between this State and the State of Kentucky ran through the town of Fulton, the north portion thereof being in Kentucky, and the south portion being in Tennessee. Plaintiff in error moved a short distance to South Fulton. The deceased became possessed of the idea that plaintiff in error was selling whisky in Tennessee in violation of law. He went to different employers of the plaintiff in error and stated to them that he was a bootlegger and had to leave South Fulton. He went to the last employer of plaintiff in error and upbraided him for harboring a bootlegger, and stated that plaintiff in error must leave South Fulton. The attitude of deceased toward plaintiff in error was known to plaintiff in error. The day before the killing the deceased was spying upon the place of business of plaintiff in error, and was seen by plaintiff in error while so engaged. Later plaintiff in error borrowed the pistol with which he killed deceased. On the day of the killing, after completing a day's labor, plaintiff in error went home with the pistol in his pocket, and when he arrived there ascertained that

supper was not ready, and concluded to go to a neighbor's house to borrow a shoelast for the purpose of repairing the shoes of some of his children. On the way he came upon a negro who was rolling a wheelbarrow on the sidewalk. Plaintiff in error spoke to the negro and informed him that it was unlawful to roll the barrow on the sidewalk. The negro passed down the sidewalk with plaintiff in error walking behind until they came to the corner of Church and College streets. There they met the deceased, who asked the negro if he did not know that it was unlawful to roll a wheelbarrow on the sidewalk. The negro informed him that he did not, and thereupon deceased arrested the negro. There was a trunk in the wheelbarrow, and the deceased immediately concluded that the trunk belonged to plaintiff in error and contained intoxicating liquors. At this point the testimony is not in accord. The State's proof is to the effect that deceased accused plaintiff in error of being the owner of the trunk and notified the negro that he was in arrest. Plaintiff in error thereupon walked around the wheelbarrow, off the sidewalk, and passed to the rear of deceased, drew his pistol as he did so, and shoved deceased, and, with an oath, said the negro would not be arrested by deceased, and fired his pistol at deceased. Plaintiff in error says that he passed around the wheelbarrow and to the rear of deceased because that was the way for him to go to the neighbor's for

Ferguson v. State.

the last, and that while doing so deceased accused him of being the owner of the trunk, and repeated his threat that plaintiff in error must leave South Fulton. Plaintiff in error says he denied being the owner of the trunk, and, seeing deceased make for his pistol, asked him not to shoot him. He says deceased drew his pistol and fired at plaintiff in error at least twice before plaintiff in error returned the shot. Deceased fired three times, plaintiff in error fired five times. After plaintiff in error had testified in substance as stated, and had introduced other witnesses than himself, the State proved in rebuttal, over the exception of plaintiff in error that deceased was a man of good character, law-abiding, peaceable, and a good officer.

A lengthy and able argument has been made in this court to show that the witnesses for the State are not credible, and that the plain inference to be drawn from the testimony of other witnesses is that deceased fired two shots before plaintiff in error fired at all. We have said in numerous cases that the verdict of the jury determines the credibility of witnesses. This is necessarily so. We do not see the witnesses nor hear them testify, and mere discrepancies in their testimony must be deemed settled by the verdict of the jury unless there is something to show that such discrepancies originated in willful falsehood. Two witnesses introduced by the State say that plaintiff in error interfered with deceased's at-

tempt to arrest the negro, pushed him, and drew his pistol and fired before the deceased returned the fire. Other witnesses are called who say that they know the general character of these two witnesses and that it is good and from it they are entitled to full faith and credit. No one else, other than plaintiff in error, undertakes to say that he saw the beginning of the difficulty, and consequently there is no direct contradiction of the State's witnesses. The argument made for the plaintiff in error is that a fair inference from the testimony of the other witnesses contradicts the testimony of the State's witnesses to the effect that plaintiff in error fired the first shot. Obviously these questions are settled by the verdict of the jury.

Another question presented on the briefs is as to the admissibility of the State's evidence on the good character of the deceased for peace and violence. It is considered by counsel that the question has not been decided in this State. We are of opinion, however, that the case of *Rippy* v. *State,* 2 Head, 217, puts the question at rest. The law of self-defense is laid down in this case, and as a part of it it is said that the character of the deceased for violence is a proper matter for the consideration of the jury upon the question of reasonable apprehension. It is conceded by learned counsel for plaintiff in error that the character of deceased would be admissible if plaintiff in error had gone into that question; but it is said, inasmuch as deceased's char-

Ferguson v. State.

acter was not assailed by plaintiff in error, it was not competent for the State to offer testimony to show his good character. But it will be seen upon an examination of the Rippy Case that this court held that the character of the deceased for violence was admissible upon the question of reasonable apprehension. The case explains the question of reasonable apprehension, and holds that fear which is feigned or pretended will not excuse the slayer. So also, if the fear is created by a necessity, brought about by the design, contrivance, or fault of the defendant, it will not justify the killing. Hence it is apparent that the character of the deceased for violence is a proper matter for the consideration of the jury upon the plea of self-defense. This being true, the State's right to offer such testimony would not depend upon the defendant assailing the character of the deceased. Such evidence is also competent in rebuttal because it is to be considered in connection with the defendant's claim of justification.

The Rippy Case is one of the classics in our reports. It has been widely cited and quoted from as a correct exposition of the law of self-defense. Its authority has never been questioned in this State. Its language is often embodied in the charges of trial judges.

Other questions were disposed of orally.