BATTS *v.* STATE.*

(*Jackson,* April Term, 1946.)

Opinion filed May 14, 1946.†

---

*A separate opinion was filed with the record which contained **a** more detailed discussion of the facts.

†Designated for publication Aug. 18, 1949.

CHARLES A. STAINBACK, of Somerville, for plaintiff in error.

NAT TIPTON, ASSISTANT ATTORNEY GENERAL, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from a conviction of murder in the first degree, the jury "recommending" a sentence of twenty-one years in the penitentiary.

The defendant has filed the following assignments of error: (1) the evidence preponderates against the verdict; (2) the verdict is not supported by the evidence; (3) that the verdict is a nullity and no judgment can be pronounced thereon.

The verdict of the jury was as follows: "We, the jury, find the defendant guilty of first degree murder with mitigating circumstances and recommend a sentence of twenty-one years in the state penitentiary."

It is insisted "The verdict does not fix the punishment as required by law, but merely recommends a certain term in the penitentiary and is therefore void and a nullity."

Considering the first two assignments of error, we think the evidence very definitely presents an issue of fact to be determined by the jury. It is the exclusive province of the jury to weigh the evidence and find the facts; it is their duty to pass upon the credibility of witnesses and the weight to be given their testimony. The trial judge lays down certain well-established rules to guide the jury in determining the matter of credibility. This Court does not consider errors based upon the mere credibility of witnesses where the State's contention is supported by witnesses whose credibility has met with favor as shown by the verdict of the jury. We cannot say that the jury was in error in accrediting these witnesses as being worthy of belief. We view the verdict in the light of the important fact that the trial judge also has approved the action of the jury in accrediting the State's proof.

It is very clear from the record that the jury elected to believe Reginald Sanders, Opie Ross, and others, all negroes, and discredit the defendant and especially J. C. Watkins, a white man. The jury simply did not believe that the deceased was advancing upon the defendant with an open knife at the time he received a fatal wound. If Sanders, Opie Ross, and Sam Wright are worthy of credit, and the jury found that they were, then the killing was wholly without justification; it was a willful and premeditated murder.

The deceased and the defendant had had no trouble. The weight of the evidence shows that Richardson was never out of the storehouse from the time he arrived until he left the front door to go home, at which time he was shot and killed by the defendant. Sam Wright testified that he heard Frank Batts, the defendant, say a few minutes after the homicide, " 'I did not intend to kill this boy; yonder is the boy I intended to kill;' and looked at me." No reason is advanced why the deceased should have made any assault upon the defendant and there is no reason why the defendant should have killed Richardson unless he had mistaken him for Sam Wright with whom he had shortly before had a serious difficulty.

██ ██ If the defendant Batts is to be believed, the deceased, without any reason whatever, made a deadly assault upon him as he came out the front door by opening a knife and advancing upon him. This is most incredible in the light of defendant's statement, "I did not know Ernest Richardson and had no reason to kill him." He knew Sam Wright had gone in the back door and would very likely come out the front door with his group to go home, and so defendant waited at the front of the store to shoot the man who had held an open knife to his throat a

few moments before. If the defendant was lying in wait for Wright at the front of the store and by mistake killed Richardson, the verdict of murder in the first degree is fully warranted. Malice is inferred from the use of a deadly weapon.

It is true there are contradictions between the State's witnesses on some points, but, as pointed out by the Assistant Attorney General, there are also contradictions and discrepancies in the testimony of defendant's witnesses. The jury has reconciled these contradictions and discrepancies and it is not the province of this Court to try and reconcile the differences. *Ferguson* v. *State,* 138 Tenn. 106, 196 S. W. 140.

We find no merit in the first two assignments of error and they are accordingly overruled.

Under the third assignment it is insisted the verdict of the jury is a nullity because they merely *recommended* a sentence of twenty-one years in the penitentiary and did not *fix* the punishment. In support of this assignment counsel refers the Court to *Gholston* v. *State,* 143 Tenn. 126, 223 S. W. 839; *Mays* v. *State,* 143 Tenn. 443, 226 S. W. 233; and *Waddle* v. *State,* 112 Tenn. 556, 82 S. W. 827, 828.

In the first two cases the jury simply returned a verdict of murder in the first degree. In the Mays case Chief Justice Green correctly holds, ''The procedure below would have been proper prior to the enactment of chapter 5 of the Acts of 1919.'' Since that time, it is said in the same opinion, the jury alone ''is authorized to assess the penalty in cases where a defendant is found guilty of murder in the first degree.'' In the Waddle case the verdict of the jury was, ''We find him guilty as charged in the indictment, with mitigating circumstances.'' In

all these cases the trial court fixed the penalty. It was pointed out in the Waddle case that the verdict was in contravention of Shannon's Code 6441 which required the jury to say in their verdict "whether it is murder in the first or second degree." It thus appeared that the jury did not say whether they found the defendant guilty of first or second degree murder. For this reason it was held to be a nullity. We cannot question the soundness of these decisions. While they are in point, they are not controlling in the case at bar.

 Prior to the passage of the Act of 1919, when the jury found a defendant guilty of murder in the first degree, with or without mitigating circumstances, the trial judge imposed the sentence of death or life imprisonment within his discretion. Where the verdict was guilty of first degree murder with mitigating circumstances, it was generally regarded as the jury's recommendation of mercy, which was in most cases followed by the Court by the imposition of a life sentence, but the finding of the jury of mitigating circumstances could be and sometimes was disregarded by the trial judge. Now the effect of the Act of 1919 was to require the jury to fix the punishment—in other words, where the jury found a defendant guilty of murder in the first degree, they alone must say if he "shall suffer death by electrocution, or be imprisoned for life or over twenty years." Code Section 10771.

 The Act of 1919, Code Section 10772, provides: "Or the jury may, if they are of opinion that there are mitigating circumstances, *fix the punishment* at imprisonment in the penitentiary for life, or for some period over twenty years." (Italics ours.) Following the vredict of the jury, the trial judge must enter a judgment in

strict compliance with the jury's verdict. The purpose of having the jury assess the punishment in first degree murder cases was to take away from the trial judge his discretion to impose the death sentence or a life sentence where the jury had found a defendant guilty of murder in the first degree *with mitigating circumstances*. Also when the jury fixed a definite term in the penitentiary it was mandatory upon the Court to pronounce judgment accordingly.

In the case at bar the jury very clearly indicated just what judgment the Court should pronounce. Instead of saying, ''We fix his punishment,'' the language used was, ''We recommend a sentence of twenty-one years in the penitentiary.''

█ We think the verdict of the jury amounts to a fixing of the maximum period for which the defendant can be confined, and cannot be treated as a nullity. The Assistant Attorney General has cited *Ex parte Richards,* 150 Mich. 421, 114 N. W. 348, and *Lewis* v. *State,* 51 Ala. 1, 4, in support of the State's insistence that the verdict substantially complies with the statute. In the Richards case the Supreme Court of Michigan, in construing an indeterminate sentence statute, held, ''The language of the sentence as to the maximum period, although in the form of a recommendation, amounts to a 'fixing' of the maximum period for which the prisoner could be confined, and hence cannot be treated as a nullity, so as to justify a re-sentence.''

In *Lewis* v. *State, supra,* the verdict of the jury was in these words: ''We, the jury find the defendant guilty of murder in the second degree, and *recommend* his *sentence* to the penitentiary for twenty years.'' In holding this verdict to be valid it was said: ''This verdict is

founded on the Code. The Code declares, that 'any person, who is guilty of murder in the second degree, must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than ten years, at the discretion of the jury.' Rev. Code, Section 3654. It is contended for the defendant, that the word *recommend* does not sufficiently declare the exercise of discretion by the jury in fixing the period of the imprisonment in the penitentiary. It is true that this is not possibly the most apt word that could have been used in such a case. But it certainly fixes the time of the imprisonment with sufficient clearness to enable the court to carry the verdict into effect by its judgment. This is enough. The court will construe the language used in reference to the purpose necessarily intended.''

 While the words ''fix'' and ''recommend'' are not synonymous, we hold that it is not essential that the verdict be in the precise language of the statute. There is a substantial compliance with the statute if the verdict unmistakably indicates to the trial court that in the opinion of the jury the defendant should serve a definite number of years in the penitentiary as a punishment for his offense. This assignment is overruled.

The fourth assignment of error complains that the trial judge erred in charging the jury as follows: ''In considering the contention of the State, I charge you that it is a law that if a defendant has shot and killed one person while he was attempting to perpetrate or commit murder in the first degree upon another, he committed murder in the first degree and the attempt to commit murder in the first degree supplies the elements of deliberation and premeditation so that the State does not have to show deliberation and premeditation on the part

of the defendant to take the life of the person killed.'' It is earnestly contended that this part of the charge was erroneous because: ''(a) * * * there was nothing in the facts that would justify such a charge to the jury, the evidence being vague, uncertain, and contradictory on this point; and (b) Further, if the Court was justified in giving this charge, the same was erroneous in that it did not state that the State must prove beyond a reasonable doubt that if the defendant had killed the person intended to be killed, he would have had to have done it by means of poison, lying in wait, or willfully, deliberately, maliciously, and premeditatively, and under such facts and circumstances that the intended killing would have been murder in the first degree and should have defined to the jury murder in the first degree. This, the Court failed to do, but simply left it to the jury to determine what would constitute murder in the first degree.''

In support of this contention counsel have cited a number of cases, to wit, *Green* v. *State,* 154 Tenn. 26, 285 S. W. 554; *Crawford* v. *State,* 44 Tenn. 190; *Nelson* v. *State,* 32 Tenn. 482; and others. We think counsel is mistaken in the view that there is no evidence to support the charge, or that the evidence is uncertain and contradictory on this issue. We have heretofore pointed out certain facts which, in our opinion, justified the jury in finding that defendant shot Richardson under the mistaken belief that he was shooting Sam Wright. It is unnecessary that we repeat this testimony.

The only question left for determination is (1) the sufficiency of the charge and (2) if not a full and correct statement, is it reversible error in the absence of a request for further instructions?

40

■■ In *Green* v. *State, supra* [154 Tenn. 26, 285 S. W. 557], the Court quotes with approval the following from *Crawford* v. *State, supra*: "It is not enough, in criminal cases involving the life and liberty of the accused, that the law of the case be partially stated. The accused is entitled, in such cases, to such a charge as the facts of the case require, and nothing short of that will satisfy the demands of justice." This rule has never been departed from or in any way evaded, and we shall not do so in the instant case. We think the trial court fairly presented the theory of both the State and the defendant. The State insisted on a conviction of murder in the first degree upon the ground that the defendant was lying in wait for Sam Wright and the killing of Richardson was a case of mistaken identity. The defendant claimed self-defense. That part of the charge complained of followed the presentation of the State's theory. The Court had correctly defined the several grades of felonious homicide. We think it was unnecessary that any further definition be given in connection with the killing through mistake. The Court had told the jury in substance that if all the elements were present and made out a case beyond a reasonable doubt of murder in the first degree, had Wright been slain, "Then the State does not have to show deliberation and premeditation on the part of defendant to take the life of the person killed." It is not insisted that this is erroneous. It is insisted, however, that the trial judge erred in not instructing the jury that if they found the defendant would have been guilty of second degree murder, or manslaughter, had he killed Wright, then he would have been guilty of no greater offense in killing Richardson. While this is bound to be true, we cannot say that the Court's

omission or failure to make that statement to the jury constituted reversible error, in the absence of any special request on that point.

The last assignment of error complains of the separation of the jury, which vitiated their verdict. It appears that the separation consisted of the jury being taken to a barber shop to be shaved. The shop had two barbers, one of whom was on the jury. The testimony of the barber who was not on the jury was that he did not mention the case to any juror. An officer in charge of the jury testified he took several of the jurors to a rest-room in the barber shop, but no one talked to them. The sheriff, who was not sworn to attend the jury, testified he delivered some cigarettes to the jury but did not discuss the case.

From an examination of all the evidence we find nothing to indicate that any outsider attempted to contact the jury about this case, not to mention an effort to improperly influence their verdict.

We have given to each assignment of error the most careful consideration and feel that they are without merit. The judgment of the trial court is therefore affirmed.

All concur.