Eddie AYERS, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Dec. 10, 1970.

Certiorari Denied by Supreme Court

Feb. 1, 1971.

Hugh W. Stanton, Jr., G. Edward Draper, Harry U. Scruggs, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., James H. Allen, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

MITCHELL, Judge.

### OPINION

Eddie Ayers, who will be referred to as the defendant or by name, indigent and represented by the Public Defender, has appealed this conviction of robbery, and a sentence of five years in the penitentiary from the Criminal Court of Shelby County, Tennessee, Honorable John P. Cotton, Judge presiding.

The defendant was tried on February 16, 1970 and convicted of robbery of Julia B. Marcus, the jury fixed the punishment at not more than five years, upon which the trial judge pronounced judgment. The motion for a new trial was heard and overruled and the defendant appealed and assigned errors.

According to the testimony of Mrs. Julia Marcus, wife of Marshall H. Marcus on the 4th day of October 1969, she had gone to Loebs Sundry Store to get a social security check cashed and to buy two money orders. As she came out of the store a slender, straight-backed person who had an afro hair cut and irregular features brushed up against her and followed her about 30 feet. She got a good look at him. She pointed to the defendant in the courtroom and said "he's right over there." The record showed she pointed out the defendant in the courtroom. She stated the traffic was heavy, this man was following her and she was frightened. She crossed the street from Montgomery to Jackson, sat down on a bench beside an old colored woman and told her she was frightened, someone was following her. He came and got a little bit in front of her, she got up

and walked about six feet. She had the strap of her bag across her shoulder. He lunged at her, grabbed her bag and went around the house at Montgomery. He was violent, her shoulder was bruised for two weeks. "This is the bag worth $5.00." She had $48.00 and two money orders, one for $10.70 and one for $5.00. He was beside her when he grabbed the purse. He just kept yanking and yanking. She tried to fight him, and she was scared to death. She had a bag full of groceries.

He just ran like a deer. She had no doubt of the defendant, she was satisfied the defendant was the man who robbed her.

Mrs. Lily Wright on October 4, 1969 from her second story open window nearby at 1228 Jackson at corner of Jackson and Montgomery she saw the defendant following Mrs. Marcus and looked like he was going to do something to her and she saw him grab her purse. "I saw them struggling and then saw the defendant run away." She positively identified the defendant as the man who snatched Mrs. Marcus' purse or bag. Mrs. Wright said she shouted, "don't do that," "don't do that". He got the purse. She heard Mrs. Marcus hollering "help me", "help me." It was a warm day, the sun was shining. She saw the defendant's face, pointed him out in the courtroom. She had seen him on many occasions before, she knew his mother, "he's known in the neighborhood as Peter Paul. They scuffled and he grabbed her purse and took out around my house." Dave Wright, husband of Mrs. Lily Wright, testified they live at 1228 Jackson, that he has lived in Memphis since 1910. Their house is on the corner, one window faces Montgomery and one faces Jackson. He was in the back of the house, his wife was in the front room. He saw a man running back of his house. It was daylight but he did not know what time it was. He stated he recognized the person running, "we call him Peter Paul." He pointed out the defendant in the courtroom. That he was sure of it. "It was Peter

Paul, he ran right on by me, I saw him running with something in his hand in between the houses on Olympic", but he did not know what he had in his hand. That he had known the defendant since he was a small boy, about 14 years, and he was positive it was the defendant that he saw.

Mose Banks, age 75 lives at 735 North Bellevue has been in Memphis about 60 years, testified that on October 4, 1969 about 5:45 P.M. he saw the defendant grab this lady and snatch her pocketbook. That was while he was standing on the corner of Jackson and Montgomery. It was daylight, a clear day. That when he first saw them, this man was walking behind the lady. "All at once I did see him running and go slapping the pocketbook, and just snatched it till he got it loose from her." When asked if he got a good look at the man who snatched the pocketbook, he answered, "sure, I know him, we call him Peter Pawn" that he had known him since he was a kid, he pointed out and identified the defendant Eddie Ayers in the courtroom. "He yanked it two or three times before he got it loose from her and she was just hollering, she was holding to the pocketbook just as tight as she could. She was hollering, help, help."

The defendant testified and denied his guilt. He insisted he did not rob Mrs. Marcus, that he did not follow her to the corner of Jackson and Montgomery. That he did not have an afro hair cut, that he had only recently been discharged from the military service on September 10, and they would not allow him to wear an afro hair cut in the service.

The defendant contends he spent all of that day in the pool hall of Mr. Jesse Williams, and that at the time the State says the robbery was committed he was in the pool hall shooting pool. That at the time of her arrest and trial he denied his guilt and denied that he had anything to do with the robbery of Mrs. Marcus. That someone came into the poolroom and told him about the purse snatching. He testified that everytime a crime was committed

in the area, the police came looking for him, he was afraid they would arrest him for this incident, so he left the pool hall by the back door.

Jesse Williams testified he was the manager of Klondyke Billiard Parlor. That the defendant was in the pool room on the afternoon of October 4, 1969, that he could not specify what time it was. Mr. Williams said he had to leave the poolroom to go next door to the whiskey store to make a phone call, and he asked the defendant to watch the poolroom while he was gone. While he was on the phone in the whiskey store Mrs. Marcus the prosecutrix came in and called the police. Whe he returned to the poolroom he told the people there a woman's purse had been stolen. The defendant was in the poolroom when Mr. Williams returned. The defendant finished his game and asked to be let out the back door because he did not want to get in any trouble and did not want to become involved in anything.

The defendant has assigned errors as follows:

1. There is no evidence to support the verdict and the evidence preponderates against the verdict.

2. The trial judge erred in refusing to grant the defendant's motion for a directed verdict at the close of the State's proof and at the close of the defendant's proof when the State had failed to prove venue in the cause.

3. The trial judge erred in allowing the identification testimony of the prosecuting witness, Mrs. Marcus, to be put in evidence since she could not identify the defendant in the lineup and admitted she could not identify him in the courtroom until prompted by other witnesses in the cause.

In considering the assignment of error number 1, we are bound by the following well-known rules:

"It is the duty of this Court to review the evidence and we may not reverse a judgment upon the facts unless the evidence preponderates against the guilt of the defendant and in favor of his innocence."

"Our Supreme Court has said in Gann v. State, 214 Tenn. 711, 383 S.W.2d 32, that:

"(1, 2) In considering this case on appeal, we do so with the presumption that the defendant is guilty as found by the jury and approved by the court. His presumption of innocence disappears after conviction and he is presumed to be guilty here. The jury and the trial judge see and hear the witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the matter than are we who see only the record. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57 (1961); Gang v. State, 191 Tenn. 163 [468], 197 [234] S.W.2d 997 (1950); Christian v. State, 184 Tenn. 163, 197 S.W.2d 797 (1946); Ferguson v. State, 138 Tenn. 106, 196 S.W. 140 (1917).

"(3, 4) Likewise, it has long been the law of this State that the credibility of witnesses and conflicts in testimony are settled by the verdict of the jury when approved by the trial court. In this case much of the evidence presented by the State is diametrically opposed to the statements of the defense witnesses. Under such circumstances, it is the duty of the jury to determine the truth of the situation, following closely the instructions of the judge. In so doing, the jury should reconcile any conflicts of testimony which may be reconciled, then the duty of the jury is to accept that which they think true and reject the false. Holt v. State, supra; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385 (1959).

\* \* \* \* \* \*

"(7) A guilty verdict, as previously discussed, accredits the testimony of witnesses for the State and establishes their

credibility, and raises a presumption of the defendant's guilt, placing upon the defendant the burden of showing that the evidence preponderates against the verdict. In our opinion the defendant has not carried the burden."

■ Responding to assignment of error number 2, with reference to a motion for a directed verdict, we think a fair interpretation of the evidence is that the crime was committed on October 4, 1969 at the corner of Jackson and Montgomery Streets in Memphis and that the court can take judicial knowledge that Memphis is in Shelby County. It was held in Hopson v. State, 201 Tenn. 337, 299 S.W.2d 11, that:

"The Court can take judicial knowledge of the fact that Memphis is in Shelby County."

It has also been held in Gilliland v. State, 187 Tenn. 592, 216 S.W.2d 323, that:

"Venue is jurisdictional and may be established by the preponderance of the evidence (not beyond a reasonable doubt). Norris v. State, 127 Tenn. 437, 438, 155 S.W. 165. Venue, like any other fact, may be proven by circumstantial evidence. Ford v. State, 184 Tenn. 443, 201 S.W.2d 539. In proving venue it frequently becomes necessary to add together the evidence of two or more witnesses for obvious reasons. The authorities generally recognize this as a proper and necessary means of establishing this jurisdictional fact. See 23 C.J.S., Criminal Law, § 914, page 169."

We hold that the venue was clearly established and overrule this assignment of error.

With reference to assignment of error number 3, concerning the testimony of the victim as to the identification of the defendant, the record fails to show that the defendant made any objection to this testimony when it was received in evidence. It was held in Harless v. State, 189 Tenn. 419, 225 S.W.2d 258, that:

'No objection being interposed to the testimony of the officer as to what a bystander said it may properly be considered and given its natural probative effect as if it were in law admissible. Barlow v. Verrill, 88 N.H. 25, 183 A. 857, 104 A.L.R. [1126] 1130. Long ago this Court observed in Baxter v. State, 83 Tenn. 657, that parties *"May admit illegal evidence if they don't choose to object, if they do not want to admit it, they should object as soon as it is offered.'*

and in Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385, the Supreme Court said:

'* * * It is well settled that this Court will not consider an assignment of error based on the admission or exclusion of evidence unless timely objection and exception was made in the Trial Court and the Trial Court given an opportunity to make correction. Rule 14 (5), 203 Tenn. 803, 805; Turner v. State, supra, 188 Tenn. 312, 322, 219 S.W.2d 188, 193; Nichols v. State, 200 Tenn. 65, 91–92, 289 S.W.2d 849, 860, and cases there cited.'

■ However, we find the evidence concerning the identification of the defendant is clear and convincing because the defendant was positively identified by other eye witnesses who, independent of the testimony of Mrs. Marcus, testified that the defendant was well-known to them, that they knew his name and positively identified him in the courtroom as being the man they saw attack Mrs. Marcus and snatch her purse or bag from her, so that in this case the identification of the defendant is clearly established by other witnesses and identification does not rest alone on the testimony of the victim.

We hold that there was no error in receiving this testimony in evidence and that its weight and value was a question for the determination of the jury.

The assignment of error is overruled.

The judgment is affirmed.

We express our thanks to court appointed counsel for valuable service rendered to the defendant.

GALBREATH and OLIVER, JJ., concur.