Relief was granted with the following statement:

"We are unable to concur in the view that this was an outright sale in gross. But if it should be treated as a sale in gross, we are unable to concur in the view that complainants got approximately the tract of land which was in a general way pointed out to them, but Mrs. Breast was not shown the exact boundaries, nor was she put in a position where she could have ascertained the exact location of the territory which she was about to purchase." 2 Tenn.Civ.App. p. 547.

▮ The last cited case illustrates the circumstances under which relief may be granted from a deficiency in sale in gross; i. e., (a) a deficiency such as to shock the conscience of the court, accompanied by (b) other compelling circumstances, such as inequality of capacity and experience, confidential relationship, the nature of the land and dealings of the parties.

In the present case the Chancellor found that the sale was *in gross* and not *by the acre*. The Chancellor found from all the circumstances that the shortage of acres was not such as to create a presumption of fraud. These findings of fact come to this Court accompanied by a presumption of their correctness unless the evidence preponderates otherwise. § 27–303, T.C.A. The evidence does not preponderate otherwise, hence the findings are presumed correct and are made the findings of this Court.

Inherent in the conclusions of the Chancellor is a finding that there was no mutual mistake as to the identity of the land intended to be transferred. There is no evidence of any mistake in this regard, hence this finding of the Chancellor was correct.

Although there was an admitted mutual mistake as to the number of acres contained in the tract conveyed, such a mistake as to such a fact is not ground of relief under the circumstances, and the Chancellor correctly denied relief on this ground.

The admitted 37 per cent shortage in the expected quantity of land purchased does excite the sympathy of this Court and appeal to the sense of justice. Nevertheless, the rules heretofore pointed out preclude any relief to complainants. It is some consolation to the members of this Court to remember that complainants are the victims of their own inattention; that the defendants were wholly innocent of knowingly misleading complainants, and that, at this late date, it would be most difficult to say what the complainants would have been willing to pay and what defendants would have been willing to accept for their farm if the true acreage had been known to all.

The decree of the Chancellor, dismissing complainants' suit, is affirmed; and the costs of this appeal are taxed against the complainants-appellants.

Affirmed.

SHRIVER, P. J., and PURYEAR, J., concur.

**Jimmy Lee JACKSON, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Dec. 15, 1971.

Certiorari Denied by Supreme Court
Feb. 7, 1972.

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Arthur T. Bennett, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Indigent and represented by the Shelby County Public Defender duly appointed, Jackson was convicted of armed robbery in the Criminal Court of Shelby County and was sentenced to imprisonment for ten years in the penitentiary. He is now duly before this Court upon his appeal in the nature of a writ of error.

The sum and substance of the defendant's Assignments of Error is that the evidence preponderates against the verdict of the jury and in favor of his innocence, his principal plaint being that in their joint trial the jury inconsistently acquitted his co-defendant and convicted him upon the same evidence. He insists that in so doing the jury acted capriciously out of sympathy for his co-defendant and that the verdict against him was void.

When Lilton Dennis stopped his car at a traffic light in Memphis about 12:30 a. m. (Saturday night) March 2, 1969, the co-defendant, Luberta Johnson, asked him for a ride and got in the car when he pulled around the corner and stopped. At that time the defendant approached the car and asked Dennis for a match. Dennis found and replied that he had no matches. Saying that she had a match, the co-defendant produced a pistol from her coat pocket and ordered Dennis out of his car. Jackson then drew a butcher knife on Dennis and they walked him around to the front of his car and Jackson "went in my pocket" and robbed him of $15, and he and Johnson then fled. By Dennis' headlights and a street light on the opposite side of the street he could see Jackson and Johnson plainly.

In an inquiry apart from the jury, upon objection by counsel for the defendants when Dennis was about to identify them in court, he testified that he recognized a police detective and related the incident to him and was instructed to remain at a gasoline service station until the police arrived; that while waiting he walked up the street a short distance and saw Jackson and Johnson standing on a corner; that he returned to the service station and when the police arrived he got in the car with them and again saw the defendants walking down the street in the opposite direction; that, while the police were turning around, Johnson eluded them by fleeing

through a church parking lot, and they arrested Jackson and Percy Young and took them to police headquarters; that the next morning he picked Jackson's picture out of the police mug-shot book and identified him again when he was brought into the room; that the following day he identified Johnson at police headquarters; and that his courtroom identification of the defendants was based upon his observation of them while they were robbing him and was not influenced in any way by seeing them at police headquarters. The trial court overruled the defendants' objection to Dennis' identification testimony. Before the jury he then pointed out and identified Jackson and Johnson and described their clothing and appearance at the time of the robbery, including Johnson's wig and one gold front tooth.

The police found a butcher knife on the street a few feet from where Jackson was arrested. The officer who arrested Johnson testified that she was asleep in a rooming house and, when permitted to dress she put on the brown leather pants and the other items described by Dennis, and that she had gold in her mouth, and that a man known as "Schoolboy" came into the room wearing a black wig and said it was hers and left it there while the officers were present; and that Dennis identified her at police headquarters.

The defendant Jackson testified that he was at Mary's Cafe from midnight until it closed at 1:00 a. m.; that Luberta Johnson and her boy friend Percy Young were there at the same time and he and Percy had a few beers; that, although he did not know Luberta's name at the time, she was walking along with him and Percy, and the reason she left and went through the church parking lot just before the police stopped was that she lived right around the corner and was on her way home; and that he had nothing to do with the robbery.

Luberta Johnson testified that she left the Section Playhouse Tavern Saturday night about 9:00 o'clock and went with her boy friend Percy Young to Mary's Cafe

and stayed until 1:00 a. m.; that she did not see Jackson at Mary's Cafe; that after she and Percy left the cafe at 1:00 a. m. and started down the street, Jackson overtook and walked along with them; that when she saw the police she looked at Jackson and Young and went through a church lot and an alley to William Edmons' room; that she and her boy friend were going to William Edmons' room and that when Jackson overtook them she heard him say something about going to a doctor, and she supposed that Percy Young just walked on up the street with Jackson instead of turning off with her; that the wig introduced in evidence was hers, but she had left it in "Schoolboy's" room and was not wearing it Saturday night; that she was arrested in Edmons' room about noon on Sunday; and that she did not participate in the robbery and knew nothing about it.

Martha Hunter corroborated Luberta Johnson about being at Mary's Cafe until 1:00 a. m. She also said that neither Jackson nor Percy Young was at Mary's Cafe while she was there.

■ T.C.A. § 40–2523 provides that upon an indictment against several defendants, any one or more may be convicted or acquitted. That statute is in accord with the general law. Where several persons are jointly indicted and tried for an offense which may be committed by one person alone, as distinguished from crimes which can be committed only by two or more acting in concert, the jury may, by separate verdict, convict one or more and acquit the others or disagree as to the others. Thus, in a multiple-defendant case where consummation of the crime charged does not necessitate the concerted action of two or more, inconsistency in a verdict convicting some and acquitting other defendants does not invalidate the convictions. Even where the evidence is the same as to all defendants, an acquittal of one does not mandate acquittal of the others. 23A C.J.S. Criminal Law § 1402 c.

Inconsistency of criminal verdicts as between two or more defendants tried together is the subject of an exhaustive annotation in 22 A.L.R.3d, beginning at page 717. The author summarizes the law as follows:

"In accordance with the general principle that consistency is unnecessary in criminal verdicts, most modern courts are agreed that the verdicts as between two or more defendants tried together in a criminal case need not demonstrate rational consistency."

We refer to two of the cases cited by the annotator. In Odom v. United States, 377 F.2d 853 (5th Cir. 1967), a jury convicted the defendant of knowingly receiving a stolen automobile which had been transported in interstate commerce in violation of the Dyer Act (18 U.S.C. § 2313), but acquitted his co-defendant who was the alleged transporter of the car. Rejecting the contention that the verdicts returned by the jury were prejudicially inconsistent, the Court held that the defendant had no vested right to insist upon the conviction of his co-defendant as a prerequisite to his own conviction. The Court said that while it may be difficult to comprehend how the jury exculpated the alleged initial thief and transporter of the car, while at the same time it convicted the defendant for receiving the car, the ". . . appellant argues an anomaly when he questions the consistency of these verdicts. The rendering of inconsistent verdicts has always been an exclusive privilege and prerogative of the jury, and it is not our duty to unravel the ratiocinations of the jury's collective logic. United States v. Dotterweich, 1943, 320 U. S. 277, 64 S.Ct. 134, 88 L.Ed. 48; Dunn v. United States, 1931, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; United States v. Lester, 6 Cir. 1966, 363 F.2d 68; United States v. Shipp, 6 Cir. 1966, 359 F.2d 185; Dugan Drug Stores, Inc. v. United States, 5 Cir. 1964, 326 F.2d 835; Hagan v. United States, 5 Cir. 1957, 245 F.2d 556."

In Manning v. Florida (Fla.S.Ct.) 93 So.2d 716, jointly indicted and tried for rape, the defendant was found guilty of assault with intent to rape and his co-defendant was acquitted upon evidence from which the jury could have found them to be equally guilty. Rejecting the contention that the jury's verdict was fatally inconsistent, the Court held that each defendant in a criminal case is entitled to have his guilt or innocence determined by the jury without reference to the guilt of his co-defendant, and that a verdict in a criminal case will not be condemned and reversed for such inconsistency.

In State ex rel. Myers v. Brown, 209 Tenn. 141, 148, 351 S.W.2d 385, 388, in discussing T.C.A. §§ 40–2523 and 40–2524 our Supreme Court said: "The purpose of said statutes is to provide a method by which a jury considering cases of separate defendants may render an independent and separate verdict as to each defendant."

In the case before us, the trial court clearly followed the statute of this State and the general law when he instructed the jury:

"You may convict both of the defendants or acquit both of them, or convict one and acquit the other. If you find from the evidence, beyond a reasonable doubt, both guilty, you should convict both. If you find from the evidence, beyond a reasonable doubt, one guilty, and have a reasonable doubt as to the guilt of the other, you should convict the one you are satisfied beyond a reasonable doubt as to the guilt of, and acquit the other. If you have a reasonable doubt as to the guilt of both, you should acquit both."

This record fully justified the jury's verdict finding the defendant guilty. He has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence. His contention that he should have been acquitted simply because the jury acquitted his co-defendant is untenable.

Let the judgment of the trial court be affirmed.

WALKER, P. J., and MITCHELL, J., concur.