**Leo Charles PULLEY and William Thomas Johnson, Plaintiffs in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Sept. 19, 1973.

Certiorari Denied by Supreme Court Jan. 21, 1974.

Monte D. Curry and Walter S. Clark, Jr., Nashville, for plaintiffs in error.

David M. Pack, Atty. Gen., and Phillip W. Brooks, Asst. Atty. Gen., Robert H. Schwartz, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

The defendants, Leo Charles Pulley and William Thomas Johnson, jointly indicted

and tried for the killing of Billy Joe Elam, have perfected their appeals in the nature of a writ of error to this Court contesting their Davidson County Criminal Court murder convictions. Pulley, represented throughout by the Public Defender, was convicted of first degree murder and was sentenced to imprisonment in the penitentiary for 30 years. Johnson, represented at trial by one retained attorney and here by another, was convicted of second degree murder and was sentenced to not less than 10 nor more than 20 years in the penitentiary.

In Johnson's Assignments of Error he complains that the trial court did not charge the jury the law regarding voluntary confessions or admissions, or regarding his knowingly and intelligently waiving his constitutional right to remain silent and to have counsel present during interrogation, or concerning the law of "waiver"; that trial counsel's mistake in not objecting to admission of his confessions or admissions in evidence (so as to allow the court to rule on their admissibility) denied him due process of law guaranteed by the Fourteenth Amendment; and that, since that mistake by defense counsel was so apparent, the court erred in not intervening and hearing evidence to determine the admissibility of his confessions. In attempting to raise those questions here, Johnson confronts an insuperable difficulty. He did not raise them in his motion for a new trial.

█ Absent any patent invalidating error, the law is settled in this State that the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and Assignments of Error which were not incorporated in the new trial motion will not be considered on appeal. Hughes v. State, 3 Tenn.Cr.App. 602, 465 S.W.2d 892; Nelson v. State, Tenn.Cr.App., 470 S.W.2d 32; Rule 14(4) and (5), Rules of Supreme Court of Tennessee—adopted by this Court. Consequently, questions raised for the first time on appeal will not be considered. Hancock v. State, 1 Tenn.Cr. App. 116, 430 S.W.2d 892; State ex rel. Carroll v. State, 1 Tenn.Cr.App. 427, 443 S.W.2d 689; Pruitt v. State, 3 Tenn.Cr. App. 256, 460 S.W.2d 385.

In State ex rel. Carroll v. State, supra, we cited and quoted from Ezell v. State, 220 Tenn. 11, 413 S.W.2d 678. The late beloved Chief Justice Burnett went on to say in *Ezell*:

"We take this opportunity to remind attorneys that diligence and alertness must be exercised in the preservation of errors for review in appellate courts. The orderly administration of justice demands that appellate courts maintain certain rules of review. Attorneys are charged with knowledge of these rules and owe a duty to their clients, as well as to the courts, to conscientiously adhere to such rules. When there are assignments of error which do not comply with the prerequisites for appellate consideration, it is, unfortunately, the client who bears the burden of the attorney's mistakes."

In *Hancock* and in *Carroll* and in *Pruitt*, supra, we quoted as follows from Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780:

"Questions raised for the first time on appeal will not be considered, or stated in another way, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial. See Ex parte Calhoun, 187 Tenn. 372, 215 S.W.2d 789 (1948); Parker v. Reddick, 196 Tenn. 472, 268 S.W.2d 357, 45 A.L.R.2d 1096 (1954), and Rule 14(5), Rules of this Court, which provides in part:

'This is a court of appeals and errors, and its jurisdiction can only be exercised upon questions and issues tried and adjudged by inferior courts, the burden being upon the appellant, or plaintiff in error, to show the adjudication, and the error therein, of which he complains.' "

However, without circumventing or relenting the foregoing rules, we deem it appropriate to address the questions Johnson has raised here, in order to set them at rest. As noted, his first three Assignments complain that the trial court erred in failing to instruct the jury concerning the law of confessions and admissions, the law regarding his right to remain silent and have counsel present during interrogation, and the law concerning waiver of constitutional rights. But there is nothing in this record showing that he tendered any special request for a charge on those matters or otherwise brought them to the court's attention before the jury retired to deliberate upon the case, nor did he raise any question in his new trial motion about the failure of the court to charge about those matters. Except where particular instructions are required by statute, or where the trial court wholly fails to charge on such matters as reasonable doubt or other legal principles required by the issues and evidence, objections to the charge may not be raised for the first time on appeal. Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; Gordon v. State, Tenn.Cr.App., 478 S.W.2d 911. See also: Rule 14(5), Rules of the Supreme Court of Tennessee, adopted by this Court.

Absent a special request, the trial court will not be put in error for failure to charge the jury as to the weight to be given a confession. Tines v. State, 203 Tenn. 612, 315 S.W.2d 111; Vance v. State, 190 Tenn. 521, 230 S.W.2d 987.

Moreover, it should be noted, Johnson's Assignments complaining about the trial court's charge do not claim that his confessions were involuntary or otherwise inadmissible.

There can be no merit in Johnson's fourth and fifth Assignments that he was denied due process by failure of his counsel to object to admission of his confessions, and that because of that error the trial judge should have intervened to conduct an evidentiary hearing on the issue of the voluntariness of his confessions. Defense counsel closely and extensively examined Johnson's probation officer and the two police officers who were present when he made his confessions, interrogated those officers concerning the explanation given to Johnson about his constitutional rights, did not request any preliminary inquiry by the court apart from the jury relative to the voluntariness of the confessions, and made no objection to their admission in evidence. There is nothing in the record to suggest that the confessions were anything but voluntary. Johnson's mother was present when he was informed of and waived his rights. He was 15 or 16 at the time, and his mother suggested the officers question him about the killing of the deceased. There is nothing to indicate that he was deprived of his contact with his family, or that he was otherwise abused or coerced in any way. Upon this record we cannot say that the failure of his trial counsel to object to admission of his confessions in evidence demonstrated incompetency "such as to make the trial a farce, sham, or mockery of justice," the standard applied to alleged ineffective representation by defense counsel. State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263; Andrews v. Russell, 2 Tenn.Cr.App. 89, 451 S.W.2d 704.

The law is well settled that the trial court is under no duty to hear evidence on the voluntariness of a confession absent a request for such a hearing or an objection to admission of the confession. United States v. Monroe (1970), 141 U.S. App.D.C. 251, 437 F.2d 684; United States v. Frazier (6th Cir. 1967), 385 F.2d 901; Lundberg v. Buchkoe (6th Cir. 1968), 389 F.2d 154; United States v. Carter (8th Cir. 1970), 431 F.2d 1093; Evans v. United States (5th Cir. 1967), 377 F.2d 535; Moreno v. Beto (5th Cir. 1969), 415 F.2d 154. One obvious reason for this rule that the court will not *sua sponte* launch an investigation into the voluntariness of a proffered confession is that the accused cannot

be required to testify even in such an inquiry.

So much for the questions Johnson has attempted to raise for the first time in this Court.

■ We turn now to Pulley's case. Reiterating one of the grounds advanced in his new trial motion, his second Assignment of Error is that the trial court failed to charge the jury the law relative to confessions. But, like his co-defendant Johnson, he did not request the trial court to give any such charge. But beyond that, when the details of Johnson's confession implicating Pulley were related by a police officer, Pulley's name was not mentioned before the jury but in cross-examining the officer who interrogated Johnson, Pulley's counsel brought out that Johnson's confession also implicated Pulley, and the same attorney also insisted that the full confession be admitted and passed to the jury, which was done. Also, at Pulley's counsel's request, an earlier confession by Johnson implicating Lusk as the one who killed the cab driver was also admitted and passed to the jury. A defendant cannot be heard to complain about incompetent evidence he elicits by cross-examination. Casone v. State, 193 Tenn. 303, 246 S.W.2d 22; Baxter v. State, 83 Tenn. 657; State v. Becton, 66 Tenn. 138.

For these reasons, this Assignment is obviously groundless.

Pulley's other Assignment is that the trial court failed to charge his "Request for Special Charge No. I, to-wit:

The Supreme Court of the United States has ruled that the death penalty is cruel and unusual punishment in contravention of the Constitution of the United States. You cannot therefore find the defendant guilty of murder in the first degree as the punishment for this offense has been abolished. However, you may find the defendant guilty of any lesser included offense as the facts in this case may justify."

■ In the first place, no such special request is included in the Bill of Exceptions or authenticated by the trial judge as a part thereof. Therefore, this request is not properly before this Court and cannot be considered. Wheeler v. State, 220 Tenn. 155, 415 S.W.2d 121.

Moreover, the contention that Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346, holding capital punishment unconstitutional, abolished the offense of first degree murder is a gross misapprehension. See Bowen v. State, Tenn., 488 S.W.2d 373.

■ Although neither of the defendants testified at trial and neither has assailed the sufficiency of the evidence in this case, in the interest of clarity we state the gist of it. Early in the evening of July 16, 1971 Pulley, wanting money, conceived the idea of robbing a cab driver (any cab driver) and had Johnson call a cab to come to a specified address in Nashville. When cab driver Billy Joe Elam arrived, Pulley entered the rear of the cab on the right-hand side and Johnson walked up to the front door on the driver's side. Pulley drew a .32 caliber pistol and Johnson pulled a .25 automatic, they told the driver, "Give us your money" and Pulley shot him and then took the money from his change purse and gave Johnson some of it, Johnson got the man's cigarette lighter, and they then fled. Elam, who was carrying about $17 of his own money and, according to his trip record, had collected $22, called his dispatcher and said, "They've got me this time. . . . two boys robbed me and they shot me." A short distance from where he was shot he was found dead in his cab, a fatal gunshot wound in the right side of his chest and a bullet wound through his right forearm, with his motor running and lights on. Only $4.00 were found on him and in the cab. Later that

night, Pulley asked Terry Lusk to take him to Alabama. Because Lusk had heard discussion about the robbery and killing of the cab driver, and suspecting Pulley because of his interest in leaving the State, he asked him why he did it. Pulley replied, "Man, the dude raised his arm up, and I didn't know what he was doing and I just started shooting." The following October Pulley was arrested in Detroit and returned to Tennessee. Flight to avoid arrest or prosecution may warrant an inference of guilt, a consciousness of guilt, in connection with other circumstances and in the absence of an explanation of the reasons or motives that prompted it. Rogers v. State, 2 Tenn.Cr.App. 491, 455 S.W.2d 182; 1 Wharton's Criminal Evidence (12th Ed.) §§ 139, 205. Such conduct is a circumstance regarded as inconsistent with innocence and consistent with guilt. Waldie v. State, 190 Tenn. 537, 230 S.W.2d 993; Broz v. State, Tenn.Cr.App., 472 S. W.2d 907, cert. den., 406 U.S. 949, 92 S.Ct. 2054, 32 L.Ed.2d 336. See also: Craig v. State, 2 Tenn.Cr.App. 510, 455 S.W.2d 190.

Johnson's alibi witnesses were unconvincing and the jury obviously did not believe them.

This is a plain case of wanton cold-blooded murder committed in the perpetration of a robbery, in which both defendants participated and shared the loot. Unquestionably both of them are equally guilty, and we do not comprehend why the jury only convicted Johnson of second degree murder. But verdicts as between two or more defendants tried together in a criminal case need not demonstrate rational consistency. Jackson v. State, Tenn.Cr. App., 477 S.W.2d 213 and authorities therein cited.

Let the judgment of the trial court as to each of the defendants be affirmed.

MITCHELL and O'BRIEN, JJ., concur.