IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 11, 2017 Session

**STATE OF TENNESSEE v. JUSTICE BALL**

**Appeal from the Criminal Court for Shelby County**
**No. 14-06091          Glenn Ivy Wright, Judge**

_____

**No. W2016-01358-CCA-R3-CD**

_____

A Shelby County jury found the defendant, Justice Ball, guilty of especially aggravated kidnapping, aggravated robbery, carjacking, employing a firearm during a dangerous felony, and evading arrest. The trial court imposed an effective fifteen-year sentence to be served at one hundred percent, and the defendant appealed. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions, arguing the evidence was insufficient to find him criminally responsible for the indicted offenses, while further challenging the constitutionality of the criminal responsibility statute. The defendant also argues the trial court erred in instructing the jury on criminal responsibility and their duty to not independently investigate the case. The defendant asserts the trial court erred by not granting his pre-trial motion to suppress or motion for a mistrial made during the State's case-in-chief. Finally, the defendant asserts the trial court's cumulative errors warrant a new trial. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. Ross Dyer, J., delivered the opinion of the court, in which Alan E. Glenn and Timothy L. Easter, JJ., joined.

Gregory D. Allen, Memphis, Tennessee, for the appellant, Justice Ball.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Austin Scofield and Omar Malik, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

In the early morning hours of July 8, 2014, four men carjacked, kidnapped, and robbed Muhammed Ceesay, the victim, as he was driving home from work in Shelby County, Tennessee. While pursuing the stolen vehicle, an officer saw the defendant jump out of and run from the victim's car. As a result, the defendant was charged with especially aggravated kidnapping, Tennessee Code Annotated section 39-13-305; aggravated robbery, Tennessee Code Annotated section 39-13-402; carjacking, Tennessee Code Annotated section 39-13-404; employing a firearm during the commission of a dangerous felony, Tennessee Code Annotated sections 39-17-1324(b); -1324(i)(1); and evading arrest, Tennessee Code Annotated section 39-16-603.

At the joint trial of the defendant and co-defendant, Kennith Kimble, the victim stated he was driving home from work at approximately 3:20 a.m. on July 8, 2014, when his 1996 Toyota Rav 4 stalled as he approached a red light on Shelby Drive. At the time, the driver's side window was rolled down and the doors were unlocked. As the car restarted, two men approached the victim's stationary car. One man hit the victim across the face with a gun, and both men began demanding money. Despite giving the men his wallet and cell phone, the two men got into the backseat of the victim's car, continued to hit him, and told him to drive to an ATM located at the First Tennessee Bank branch on Shelby Drive. The frightened victim complied.

On the way to the bank, the men instructed the victim to stop near the WalMart on Shelby Drive. There, the men in the backseat started "shouting at two of their friends across the road." The two "friends" got into the victim's car, "one of them jumped in the back and one of them jumped in the front." According to the victim, the defendant was the "friend" who got into the front seat and Kimble got into the backseat. Kimble demanded the gun from the man who initially hit the victim, and continued hitting the victim, while the defendant did not say anything or hit him. The victim explained he intentionally looked at the men in his car throughout the incident. He also stated he did not give any of the men permission to enter his car.

After picking up the defendant and Kimble, the men told the victim to drive to another ATM located at a gas station near Kirby Parkway and Shelby Drive. There, the victim tried to explain to the men that he could not withdraw cash. Upon hearing this, the original gunman hit the victim on the head, causing him to fall out of the car. The victim explained, "when he hit me, I felt dizzy and my weight fell on the door and the door opened, because it was already unlocked." After falling out of the car, the victim ran away and called police from a nearby gas station. During the incident, the victim was forced to drive several city blocks with the four men.

Officer Brandon Hazlerig with the Memphis Police Department responded to the victim's call around 3:20 a.m. When he arrived at the gas station, he noted the victim "had a swollen, bloody lip and he was very nervous, scared." The victim explained four black males carjacked him and gave a description of his vehicle. Less than ten minutes later, dispatch announced that the victim's car had been located. Specifically, Officer David Garrett spotted the victim's car on Hickory Hill and Mingle Drive. He began following the car as it headed northbound on Hickory Hill. Officer Garrett stayed approximately one hundred feet behind the car, explaining that he "followed it, giving directions through dispatch for other cars to come into the area to assist." While following the victim's car, Officer Garrett noticed "[t]he vehicle slowed to, maybe, five to ten miles per hour, so I realized they were getting ready to bail." At that time, Officer Garrett turned on the headlights, a spotlight, and the blue lights on his patrol car.

After jumping out of the car, two of the suspects ran north and two ran south. Officer Garrett stated he clearly saw the defendant run from the car. He testified, "[t]he rear passenger side door flew open and a male black jumped out, however, he stumbled and fell in the street. When he popped up, he popped up right in front of my, looking right into my headlights and I immediately recognized him as Justice Ball." Officer Anthony Billingsley testified that he helped establish a perimeter after the suspects ran from the victim's car. He saw footprints emerging from the wood-line, and ultimately arrested Kimble as a result. Though Officer Billingsley's name is listed on the defendant's arrest ticket, he maintained he did not arrest the defendant. Additionally, Officer Billingsley explained he did not photograph the scene.

Michael Coburn, a crime scene investigator with the Memphis Police Department, processed the victim's 1996 Toyota Rav 4 after the July 8, 2014 crimes. Investigator Coburn photographed items found inside the victim's car, including two cell phones and the victim's wallet and its contents. He also lifted fingerprints from the victim's cell phone and the exterior of the victim's car. Nathan Gathright, an expert in latent prints, testified that the defendant's left palm print was found on the victim's cell phone, and prints belonging to a man named Malik Pounds were found on the exterior of the victim's car.

Finally, the State offered the defendant's statement into evidence through Sergeant Reginal Titus of the Memphis Police Department. Sergeant Titus interviewed the defendant after the defendant waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Sergeant Titus explained that he believed the defendant "tried to downplay his involvement" as he explained the events of July 8, 2014. In the statement, which Sergeant Titus read into the record, the defendant admitted to fleeing from the victim's car, but stated he "didn't know nothing about the stolen car but [he] knew about them trying to get the money and taking him to the ATM." The defendant admitted to

turning off the victim's cell phone but stated the other men told him "to turn it off because they can track it." The defendant stated he "was sitting in the back behind the passenger," and noted that he did not hit the victim while in the car.

In his statement, the defendant further explained that after failing to get cash from the victim at the ATM, another suspect "pushed the victim away," and they drove off. The defendant claimed he asked the men to take him home, but a police car, with its lights on, started following them. The defendant told the men to pull over and "[j]ust take the ticket," but they continued driving down Myers Road instead. The defendant stated, "[w]hen the car started slowing down, everybody hopped out. When everybody hopped out, the car was still moving and I hit the ground and then I got up and start running." The defendant ran into the woods as the victim's car crashed, and was soon arrested in the area, along with Kimble. After being arrested, officers took the defendants to the Kroger on Hickory Hill where officers "let the victim identif[y]" the two suspects.

During their testimonies, the victim and Officer Hazlerig described the identification of the defendants in the Kroger parking lot. According to Officer Hazlerig, the showup occurred because two men were located in the area, "and we wanted to make sure that we had the right suspects." Officer Hazlerig explained the showup procedure, as follows:

> It is a procedure that we do where if we locate a suspect within an hour in the vicinity of a crime we are allowed to do what they call a single shot identification. We have to get approval from our supervisor, or he dictates whether we do it, or not. And that's when we do the procedure where we bring a suspect in front, and we keep the victim in the squad car, so they could see a good view of the suspect and then they tell us if we have the right person.

According to Officer Hazlerig, officers followed this procedure. He explained that approximately thirty minutes passed between his initial meeting with the victim and the showup conducted in the Kroger parking lot located near Ridgeway Road and Hickory Hill Road. Officer Hazlerig stated that the victim's car "had crashed in [the] area of Myers and Hickory Hill," approximately four miles from the gas station where he initially met the victim. During the showup, the victim sat in the backseat of Officer Hazlerig's patrol car as the defendant and Kimble "were taken out of the squad car, one at a time." Officer Hazlerig told the victim "to take a good look at each one, tell me if he recognized those people as the ones that committed the crime." At the time, the defendant was handcuffed, though the victim stated he could not tell, and illuminated by a spotlight. The victim told officers the defendant and Kimble were two of the men involved in the crimes against him.

- 4 -

The defendant did not offer any proof in his defense.  Kimble, however, testified at trial.  Aside from claiming he was misidentified, the only testimony Kimble offered pertinent to the defendant's case was his attack on the credibility of Officers Billingsley and Garrett.  Specifically, Kimble testified that the officers lied about his involvement in the crimes against the victim.  At the close of the proof, the jury was unable to reach a decision as to Kimble's charges.  However, the jury returned a guilty verdict against the defendant on all of the charged offenses, and this appeal followed.

**ANALYSIS**

On appeal, the defendant presents several issues for our review.  First, the defendant challenges the sufficiency of the evidence for his convictions obtained under the theory of criminal responsibility, arguing he was merely present during the crimes rather than an active participant.  The defendant also challenges the constitutionality of the criminal responsibility statute and argues the trial court did not properly instruct the jury on criminal responsibility or their duty to not independently investigate the case.  Additionally, the defendant asserts the trial court erred by not granting his motion to suppress or his motion for a mistrial.  Finally, the defendant argues the trial court's cumulative errors warrant a new trial.  The State asserts sufficient evidence exists to sustain the defendant's convictions and argues the defendant is not entitled to relief as to the alleged unconstitutionality of the criminal responsibility statute or the alleged errors of the trial court.  Upon our thorough review of the record, we agree with the State and affirm the judgments of the trial court.

I.    *Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  Our Supreme Court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

As alleged against the defendant by the State, one is "criminally responsible for an offense committed by the conduct of another, if: [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). If convicted under the criminal responsibility theory, defendants are "considered to be principal offenders, just as if they had committed the crime themselves." *State v. Little*, 402 S.W.3d 202, 217 (Tenn. 2013) (citing *State v. Carson*, 950 S.W.2d 951, 954 (Tenn. 1997)).

Generally, the defendant claims he did not have the requisite intent to be found criminally responsible for the crimes against the victim because he simply "entered the vehicle, sat there quietly, and never help[ed] in any manner." While "[m]ere presence during the commission of a crime is insufficient to support a conviction," we disagree with the defendant's characterization of his involvement in the crimes against the victim. *Id.* (citing *Flippen v. State*, 365 S.W.2d 895, 899 (1963)). The defendant was convicted under the theory of criminal responsibility as to especially aggravated kidnapping, aggravated robbery, carjacking, and employing a firearm during a dangerous felony. We will discuss the sufficiency of the evidence as it applies to each offense, in turn.

First, the record clearly establishes that the defendant participated in the carjacking of the victim. A carjacking "is the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) [a] deadly weapon; or (2) [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a)(1), (a)(2). At trial, the victim described how two men gained entry into his car by hitting him across the face with a gun. Once in his car, the men demanded the victim drive to an ATM while continuing to hit him with the gun. The men then told the victim to stop to allow the defendant and Kimble in the car. The defendant took the victim's phone and turned it off so as to avoid being "tracked" by the police. The four men ordered the victim to drive to another ATM where, after the victim explained he could not access any money, one of the men again hit the victim and knocked him out of the car. The four men, including the defendant, then drove away in the victim's car and did not abandon the stolen vehicle until they were followed by police. Officer Garrett testified that he saw the defendant jump out of the victim's car and run away, and the defendant admitted the same in his statement to police. The defendant also admitted that he was aware of the plan to rob the victim, but claimed he was unaware that he entered a stolen car on July 8, 2014. Upon our review of the record, it is apparent the jury weighed the defendant's statement against the vast amount of evidence produced against him at trial, and found in favor of the State. In addition, any inconsistencies alleged by the defendant were resolved by the jury in reaching their verdict. This Court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. Accordingly, sufficient evidence exists to show the defendant is criminally responsible for carjacking the victim. The defendant is not entitled to relief.

Similarly, the record shows the defendant confined the victim in his car in order to steal from him. Especially aggravated kidnapping occurs when one "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty" through the use of a deadly weapon. Tenn. Code Ann. §§ 39-13-302(a); -305(a)(1). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. An aggravated robbery occurs when the theft is "accomplished with a deadly weapon." Tenn. Code

Ann. § 39-13-402(a)(1). To be found guilty under the theory of criminal responsibility, "[i]t is not, however, necessary for one to take a physical part in the crime; encouragement of the principal is sufficient." *Little*, 402 S.W.3d at 217 (citing *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982)).

Here, the victim testified that he did not give any of the men permission to enter his car on July 8, 2014. The victim was scared and forced to drive several miles to two ATM locations at gunpoint. The men took the victim's cell phone and wallet, all while continuing to hit him with a gun. The victim was confined in the car and was only able to escape after being hit and falling into the unlocked driver's side door while stopped at an ATM. The defendant argues that because he did not physically possess the gun, he cannot be convicted for especially aggravated kidnapping or aggravated robbery. However, the defendant need not physically hold the gun to be found criminally responsible for kidnapping or robbing the victim at gunpoint. This argument is without merit. Accordingly, sufficient evidence exists to show the defendant participated in confining the victim in his car and robbing him at gunpoint. *See id.*

The defendant was also convicted of employing a firearm during the commission of a dangerous felony, to wit: carjacking. Tenn. Code Ann. §§ 39-17-1324(b)(1); -1324(i)(1)(D). As detailed above, the record is undisputed that the crimes against the victim were accomplished through the use of a gun. The victim and responding officers testified to the presence of a gun at the scene of the crimes on July 8, 2014. No evidence was presented to rebut this fact. As such, sufficient evidence exists in the record to show the defendant committed the felonies of carjacking, especially aggravated kidnapping, and aggravated robbery through the use of a firearm. The defendant is not entitled to relief as to this conviction.

Though not addressed by the defendant, the record clearly supports the defendant's evading arrest conviction as well. "[I]t is unlawful for any person to intentionally conceal themselves or flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person [] [k]nows the officer is attempting to arrest the person." Tenn. Code Ann. § 39-16-603(a)(1)(A). The defendant admitted in his statement to running from the victim's car after being followed by police with activated blue lights. Officer Garrett also testified he saw the defendant do so. Relying on the above analysis, sufficient evidence exists to support the defendant's conviction for evading arrest. The defendant is not entitled to relief.

The defendant also argues the trial court erred in denying his motion for judgment of acquittal because it recognized "the proof was far less damming against [the defendant] than against his co-defendant, Mr. Kimble," and "no rational juror could have concluded [the defendant] was guilty, especially over Mr. Kimble." However, as

explained above, sufficient evidence exists in the record to support the defendant's convictions regardless of his co-defendant's trial results. "But verdicts as between two or more defendants tried together in a criminal case need not demonstrate rational consistency." *Pulley v. State*, 506 S.W.2d 164, 169 (Tenn. Crim. App. 1973) (internal citations omitted). Accordingly, the jury's failure to reach a unanimous verdict as to Kimble has no bearing on the outcome of the defendant's case, and the trial court did not err in denying the defendant's motion for judgment of acquittal. This argument is without merit.

## II.     Motion to Suppress

Suppression issues on appeal are subject to a well-established standard of review. Appellate courts are bound by a trial court's findings of facts determined after a suppression hearing unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Matthew T. McGee*, No. E2011-01756-CCA-R3-CD, 2012 WL 4017776, at *2 (Tenn. Crim. App. Sept. 13, 2012). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Appellate courts should consider the entire record, affording the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence." *Matthew T. McGee*, 2012 WL 4017776, at *2 (citing *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001)); *see also State v. Sanders*, 452 S.W.3d 300, 306 (Tenn. 2014). However, applying the law to the factual findings of the trial court is a question of law, which is reviewed *de novo* on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

On appeal, the defendant suggests the "showup" identification of the defendant in the Kroger parking lot was improper. It is understood in Tennessee that though "showups," like the one that occurred in this case, "are inherently suggestive," they are permissible if "the showup occurs as an on-the-scene investigatory procedure shortly after the commission of the crime." *State v. Thomas*, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). At the suppression hearing, the trial court noted that the defendant's "showup" was "suggestive," but found it was allowed because it occurred "shortly after the crime, it was within one hour and that is permissible, by law." We agree with the trial court's assessment.

The evidence produced at trial established that the defendant's "showup" occurred in the area of the criminal activity less than an hour after the victim's initial meeting with police in accordance with Memphis Police Department policy. Officer Hazlerig explained the procedure of the Memphis Police Department and provided a timetable which established that the defendant's identification occurred less than an hour after the

crimes were completed and in the same area of the criminal activity. Officer Hazlerig provided street names and details of the area which established that the Kroger parking lot was located in the same vicinity as the area where the victim's car crashed, both off of Hickory Hill Road. The victim's testimony corroborated that the "showup" occurred less than an hour after his initial interaction with police, and he further testified that he intentionally looked at the men in his car throughout the criminal episode. As a result, nothing in the record preponderates against the trial court's finding that the "showup" was permissible in this case. The defendant's arguments on appeal are unpersuasive, and we affirm the trial court's denial of the defendant's motion to suppress.

### III. *Jury Instructions and the Criminal Responsibility Statute*

Generally, the defendant asserts the trial court erred in instructing the jury on criminal responsibility. He argues "the proof did not fairly raise this instruction" as he was merely present during the crimes against the victim. However, it is well settled that "[t]rial courts should provide a jury instruction on criminal responsibility if the 'issue is fairly raised by the evidence.'" *Little*, 402 S.W.3d at 217 (quoting *State v. Andrew L. Collins*, No. M2005-01685-CCA-R3-CD, 2006 WL 2380610, at *4 (Tenn. Crim. App. Aug. 15, 2006). As explained above, the facts established at trial clearly warranted the instruction.

In order to establish guilt through the theory of criminal responsibility, the State must show the defendant "knowingly, voluntarily and with common intent unite[d] with the principal offender[] in the commission of the crime." *Id.* (quoting *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (internal citations omitted)). The State accomplished this at trial. Although the defendant told police that he was unaware the car was stolen, the defendant admitted he knew the plan was to force the victim to drive to ATMs in order to rob the victim. The defendant also admitted that he turned off the victim's cell phone in order to evade the police. As a result, the defendant was indicted for the primary offenses of especially aggravated kidnapping, aggravated robbery, carjacking, employing a firearm during a felony, and evading arrest. The trial court instructed the jury as to the charges, their lesser-included offenses, and criminal responsibility for the conduct of another. The defendant's own statement was sufficient to establish that he was not only present during the crimes, but also that he had helped in the commission of the same. The trial court did not err by providing an instruction on criminal responsibility for the conduct of another.

The defendant further argues the trial court failed to give a proper jury instruction regarding criminal responsibility. Specifically, the defendant argues the trial court erred in providing the jury with the Tennessee Pattern Jury Instruction, rather than providing

the jury with specific language drafted by the defendant explaining criminal responsibility.  Again, we disagree.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)).  Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)).  An instruction will only be considered prejudicially erroneous if it fails to submit the legal issues fairly or misleads the jury as to the applicable law.  *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)).

With respect to criminal responsibility, the trial court instructed the jury as follows:

> The defendants are criminally responsible as a party to the offenses of: Especially Aggravated Kidnapping; Aggravated Robbery; Carjacking; Employing a Firearm during a Felony; Intentionally Evading Arrest with a Motor Vehicle and Evading Arrest, if the offenses were committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both.  Each party to the offense may be charged with the commission of the offense.

> The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

> In deciding the criminal responsibility of the defendant, the jury may also take into consideration any evidence offered that the defendant attempted to thwart or withdraw from any of the offenses that followed from the original offense.

> To find a defendant criminally responsible for the acts of another, it is not necessary that you find the defendant was present or that the defendant took a physical part in the crime; encouragement of the principal

offender is sufficient. However, mere presence during the commission of the offense is not sufficient to support a conviction.

Before you find the defendants guilty of being criminally responsible for said offenses committed by the conduct of another, you must find that all the essential elements of said offenses have been proven by the State beyond a reasonable doubt.

This instruction was almost identical to the instruction found in the Tennessee Pattern Jury Instructions. *See* T.P.I. - Crim. 3.01 (19th ed. 2015). This Court has previously described pattern instruction 3.01 as "a correct statement of the law." *State v. Mario Green*, No. W2006-01383-CCA-R3-CD, 2008 WL 2331020, at *7 (Tenn. Crim. App. June 5, 2008). Accordingly, the trial court did not err when denying the defendant's request for a different instruction. The defendant is not entitled to relief on this issue.

Finally, the defendant argues the criminal responsibility theory, statute, and jury instruction are unconstitutional. The State asserts the defendant has waived this issue "because he did not file a pre-trial motion challenging the constitutionality of the criminal responsibility statute." However, regardless of the State's waiver argument, this Court recently held that the criminal responsibility statute is not void for vagueness and is constitutional. *See State v. George G. Thomas*, No. E2013-01738-CCA-R3-CD, 2015 WL 513583, at *28-30 (Tenn. Crim. App. Feb. 5, 2015), *perm. app. denied* (Tenn. Aug. 12, 2015), *cert. denied*, 136 S. Ct. 1458 (2016); *see also Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) ("In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional."). This issue is without merit.

## IV. Mistrial

Courts should only declare a mistrial in a criminal matter when required by manifest necessity. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). A mistrial is an appropriate remedy when the trial cannot continue or a miscarriage of justice would result if it did. *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial is within the sound discretion of the trial court, and this Court will not interfere absent a clear abuse appearing on the face of the record. *State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998). The party seeking the mistrial has the burden of establishing the necessity for it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

On appeal, the defendant argues the trial court abused its discretion by denying his motion for mistrial made during the testimony of Officer Garrett. While providing his

narrative of the events that occurred on July 8, 2014, Officer Garrett testified that he recognized the defendant when he fled from the victim's car. According to the defendant, Officer Garrett's testimony "l[e]d to the impermissible inference that [Officer] Garrett knew [the defendant] previously due to an arrest or some negative interaction with police." The State disagrees, citing additional testimony from Officer Garrett wherein he stated "that he had met the defendant through prior community outreach efforts made by the police department to improve community relations."

Upon our review of the record, we do not find that Officer Garrett's testimony warrants a mistrial. When read in full context, Officer Garrett did not imply he knew the defendant through prior arrests. Rather, when Officer Garrett testified that he and the defendant knew each other "[]very well," the defendant immediately moved for a mistrial. The trial court overruled the defendant's motion and allowed Officer Garrett to "clear this up" by explaining his familiarity with the defendant. Officer Garrett then testified that he recognized the defendant through his work in "community policing," which he defined as "when officers are involved in the neighborhoods." Thus, Officer Garrett specifically explained that he knew the defendant only through his work in community policing. As such, the defendant has failed to meet his burden and is not entitled to relief as to this issue.

## V. Jury Instructions Regarding Outside Research

The defendant argues "it was error for the [c]ourt not to instruct the jury to not perform their own investigation or research the case outside of trial on the first day of trial." However, "[a] party challenging the validity of a verdict must produce admissible evidence to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *State v. Adams*, 405 S.W.3d 641, 651 (Tenn. 2013) (citing *Caldararo ex rel. Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 740-41 (Tenn. Ct. App. 1990)). The defendant has failed to meet his initial burden because he has not presented any evidence that the jury was exposed to extraneous information or outside influence. Absent evidence of abuse, the defendant is not entitled to relief. Furthermore, the record shows the trial court instructed the jury on their duty to not investigate the case at the start of the second day of trial. This Court presumes the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001)). This issue is without merit.

*VI.     Cumulative Error*

The defendant argues he was denied a fair trial because of an accumulation of errors by the trial court.  We discern no error by the trial court, so the defendant's argument is without merit.  *See State v. Odom*, 137 S.W.3d 572, 605 (Tenn. 2004).

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE