**STATE of Tennessee**

v.

**Sammy Andrew BROOKS, Jr.**

Court of Criminal Appeals of Tennessee, at Nashville.

Assigned on Briefs Jan. 8, 2008.

May 8, 2008.

Application for Permission to Appeal Dismissed by Supreme Court July 21, 2008.

408

Emma Rae Tennent, Assistant Public Defender (on appeal); Jonathan Levy, Clark B. Thornton, Kyle F. Mothershead, Assistant Public Defenders (at trial), Nashville, Tennessee, for the Appellant, Sammy Andrew Brooks, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Michel–Claire Bottoms, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. McLIN, JJ., joined.

The Appellant, Sammy Andrew Brooks, Jr., appeals his Davidson County jury conviction for driving under the influence, second offense, and the imposition of the resulting sentence of eleven months and twenty-nine days with service of ninety days in confinement. On appeal, Brooks raises the following issues: (1) whether the language of the DUI pattern jury instruction, particularly the phrase "impairs to any extent," is confusing and reduces the State's burden of proof; (2) whether the trial court erred in admitting the results of his breath alcohol test at trial; (3) whether the evidence was legally sufficient to support his conviction for driving under the influence; and (4) whether the decision of the trial court to sentence him to ninety days in jail was excessive. After review, we conclude that no reversible error exists and affirm.

### Factual Background & Procedural History

On January 25, 2005, a Davidson County grand jury returned a two-count indictment against the Appellant charging him, in Count 1, with driving under the influence and, in Count 2, with driving while the alcohol concentration of his blood or breath was .08 percent or more. The indictment also provided notice of the State's intent to seek enhanced punishment as a DUI, second offender, based upon a previous 1997 conviction for DUI in Davidson County.

At trial, Vincent Hill, a police officer with the Metro Police Department in Nashville, testified that on August 11, 2004, at approximately 10:40 p.m., he observed the Appellant's white Cadillac passing him with its right headlight out. Officer Hill made a "U-turn" in his vehicle, pulled behind the Appellant's vehicle, and initiated a traffic stop with his blue lights. After approaching the Appellant's vehicle, Hill informed the Appellant that he was stopped because of an inoperable headlight and asked the Appellant for his driver's license. The Appellant "fumbled through his wallet excessively" and failed to produce a license, but he provided his name, date of birth, and social security number to Hill. Hill testified that the Appellant's "eyes were kind of bloodshot" and that his speech was slurred. Hill asked the Appellant if he had been drinking, and the Ap-

pellant responded that he had consumed a half pint of gin at a friend's house. Hill asked the Appellant to step out of the vehicle, and he requested that the Appellant perform several field sobriety tasks. Hill stated that the Appellant began to "giggle," "said he just wanted to go home," and asked "why was [Hill] treating him like that."

The first field sobriety task requested was the "walk and turn test," which Hill demonstrated and then asked the Appellant to perform. Hill testified that Officer Myatt arrived at the scene during this demonstration, at approximately 10:53 p.m. Rather than taking nine steps, heel to toe, with his arms to his side, as instructed, the Appellant "stopped walking, he missed heel to toe, he stepped off of the line, he raised his arms, and he took only five steps. . . ."

Hill next instructed the Appellant to perform the "one-leg stand," which he also demonstrated. He testified that the Appellant began laughing again, stated that he just wanted to go home, and refused to perform the task. Hill testified that, based on these observations, he believed the Appellant's ability to drive a motor vehicle was impaired.

Hill read the Appellant the implied consent law, which the Appellant indicated he understood, and the Appellant agreed to submit to a breath alcohol test. Hill radioed dispatch and requested a DUI unit equipped with a breathalyzer machine. The dispatch officer informed Hill that Officer Woodfin would be coming to the scene. Hill then began his twenty-minute observation period of the Appellant, who was seated in the backseat of Hill's vehicle, ensuring that the Appellant did not belch, regurgitate, chew, or drink anything that could affect the breath alcohol test results. When Woodfin arrived and pulled his vehicle beside Hill's, Hill was still observing

the Appellant and "threw up a hand signal" with three fingers indicating that about three minutes of observation time remained. Subsequently, Hill and Woodfin escorted the Appellant from Hill's vehicle to Woodfin's vehicle, and they continued to observe the Appellant as the breath testing instrument was prepared.

Nashville metro police officer Mark Woodfin corroborated Hill's account of events that took place after his arrival at the scene at approximately 11:10 p.m. He stated that he received his certification by the Tennessee Bureau of Investigation ("TBI") to operate the breath testing instrument, that the instrument was approved for use in Tennessee, and he described the procedures he followed in administering the breath test on the Appellant, which he indicated were in accordance with TBI standards. Woodfin testified that he told the Appellant to keep eye contact with him as he was escorted to his vehicle for the breath alcohol test, so that he "kept a visual on [the Appellant] to make sure that he didn't burp or regurgitate or have anything in his mouth." He stated that, as he assisted in escorting the Appellant to his vehicle, the Appellant "was unsteady on his feet" and that he smelled alcohol on the Appellant's breath. Woodfin testified that the breath test instrument "was already running" at this point, and he affirmed that it did not take much time to set up the equipment for administration of the test. Woodfin utilized the Intoxilyzer 1400 instrument to conduct the breath alcohol test at approximately 11:22 p.m. Woodfin testified that the result of the Appellant's breath alcohol test was .27%, and the test results were admitted into evidence.

The Appellant testified that on August 11, 2004, he arrived at a friend's house between 3:00 and 3:30 p.m. and shortly

thereafter drank "about one glass of gin." He stated that he received a telephone call around 4:30 p.m. from his mother, who informed him that his son, who lived in London, England, was in intensive care for an injury. The Appellant testified that he stopped drinking soon after receiving the call and that he went to sleep at his friend's house, intending to wake up later that evening, drive home, and call his son. After he woke up around 10:00 p.m., he left his friend's house, and he recalled that Officer Hill stopped his vehicle on his drive home. In describing his performance in the "stop and turn test," the Appellant testified that he "walked the straight line and then made a sharp turn like dancing[.]" He stated that Hill then placed him under arrest, handcuffed him, walked him to the police car, and left him standing on the passenger side of the car. The Appellant testified that Hill told him a "sergeant" would arrive in a few minutes to administer a breath test. The Appellant testified that Hill "removed the black cowboy hat [the Appellant] had on [his] head ... walked over to [the Appellant's] car and placed [the] hat into the front seat of [the Appellant's] car." The Appellant testified that Hill then walked back to him and that, about two minutes later, another police car arrived. Hill then escorted the Appellant to the other police car, which was occupied by another officer who instructed him to "lean over into the car and blow into" the breathalyzer instrument. The Appellant claimed that he never entered Hill's car until after the breath alcohol test had been administered. He also claimed that Woodfin was not the police officer who administered the breath alcohol test. On cross-examination, the Appel-

lant acknowledged that one headlight of his vehicle was not functioning that night.

Based upon the foregoing evidence, the jury returned a guilty verdict on count one of the indictment for driving under the influence and a not guilty verdict on count two of the indictment for driving while having an alcohol concentration in the breath of eight-hundredths of one percent (.08%) or more. The Appellant conceded that he had a prior conviction for driving under the influence and waived his right to have the jury make this determination.

After a sentencing hearing, the trial court entered judgment on the conviction for driving under the influence, second offense, a class A misdemeanor. The trial court sentenced the Appellant to eleven months and twenty-nine days, with ninety days to be served in jail, forty-five days of which would be served day for day, and the remainder of the sentence to be served on probation. The trial court also ordered payment of a $600 fine, that the Appellant be monitored by a "SCRAM" device while he was on probation, and that his license be suspended for two years.

## Analysis

### I. Jury Charge

The Appellant asserts that the trial court erred in its jury instruction defining the offense of driving under the influence of an intoxicant. The Appellant requested a special jury instruction on this issue, which was denied by the trial court.[1] He contends that the trial court erred by utilizing a pattern jury instruction when it charged the jury as follows: "[t]he law merely requires that the person be under the influence of an intoxicant. The degree

1. The special instruction requested by the Appellant and rejected by the trial court provided: "The law merely requires that the person be under the influence of an intoxicant or

drug. The degree of intoxication must be such that it sufficiently impairs the driver's ability to operate a vehicle that he/she must be deemed 'under the influence.' "

of intoxication must be such that it impairs *to any extent* the driver's ability to operate a vehicle." T.P.I.Crim. 38.01 (8th ed.2004) (emphasis added). The Appellant argues that, by charging the language "to any extent," the trial court "improperly lowered the State's burden of proof by implying that no threshold of impairment must be met before a defendant can be deemed 'under the influence.' "

 A defendant has a constitutional right to a correct and complete charge of the law governing the issues raised by the evidence presented at trial. *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn.Crim. App.1995). When the trial court gives instructions that correctly, fully, and fairly set forth the applicable law, it is not error to refuse to give a special requested instruction. *Id.* (citing *State v. Bohanan*, 745 S.W.2d 892, 897 (Tenn.Crim.App. 1987)).

We disagree with the Appellant's argument that the phrase "impairs to any extent" implies to the jury that no threshold level of impairment is required in order to convict of DUI. The phrase "to any extent" must be read within the full context of the jury instruction. The word "impairs" clearly refers to "the driver's ability to operate a vehicle," and, as the instruction provides, if the degree of intoxication impairs the driver's ability to operate a vehicle, to any extent, this fact would permit the finding that the driver was under the influence of an intoxicant. We would note that the pattern instruction, when read in its entirety, provides:

> The expression "under the influence of [*an intoxicant] [a narcotic drug* ]" covers not only all well known and easily recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of taking intoxicants or drugs in any form and *which deprives one of that clearness of*

*mind and control of oneself which one would otherwise possess.* In this situation, it would not be necessary that the person be in such a condition as would make [*him* ][*her* ] guilty of public drunkenness. The law merely requires that the person be under the influence of an intoxicant or drug. The degree of intoxication must be such that it impairs to any extent the driver's ability to operate a vehicle.

T.P.I.Crim. 38.01 (emphasis added).

Jury instructions must be reviewed in their entirety. *State v. Guy*, 165 S.W.3d 651, 659 (Tenn.Crim.App.2004). Phrases may not be examined in isolation. *State v. Dellinger*, 79 S.W.3d 458, 502 (Tenn.2002). After review, we conclude that the pattern instruction, when read in its entirety, correctly defines the phrase "under the influence," an element of the crime of DUI, and it neither misleads the jury nor shifts the burden of proof. *See State v. Phipps*, 883 S.W.2d 138, 142 (Tenn.Crim.App.1994). Moreover, this court has previously approved a jury instruction identical to the pattern instruction employed by the trial court in this case. *See, e.g., State v. Alvin B. Tate*, No. W1999–01224–CCA–R3–CD, 2000 WL 791807 (Tenn.Crim.App. at Jackson, June 16, 2000); *State v. Betty June Woods*, No. 03C01–9804–CC–00163, 1999 WL 427657 (Tenn.Crim.App. at Knoxville, June 28, 1999). Accordingly, we conclude that this issue is without merit.

## II. Admission of Breath Alcohol Test Results

 The Appellant argues that the trial court erred in allowing his breath alcohol test results to be admitted at trial. In *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992), our supreme court provided a specific framework for the admission of breath test results. The court held that

the testing officer must be able to testify as to the following:

(1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

*Sensing,* 843 S.W.2d at 416.

 Compliance with *Sensing* is a "condition precedent" to the admissibility of the breath test result. *State v. McCaslin,* 894 S.W.2d 310 (Tenn.Crim.App.1994); *see also* Tennessee Law of Evidence (4th ed., Cohen, Paine, and Sheppard), § 7.02[17]. The State has the initial burden of showing compliance with the *Sensing* standards by a preponderance of the evidence. *State v. Deloit,* 964 S.W.2d 909, 916 (Tenn.Crim.App.1997). A trial court's conclusion that the State has met its burden of proof under *Sensing* is presumed correct unless the evidence preponderates to the contrary. *State v. Edison,* 9 S.W.3d 75, 78 (Tenn.1999). The breath test result merely creates a rebuttable presumption that a defendant is under the influence of an intoxicant to the extent that his or her ability to drive is impaired. *Sensing,* 843

S.W.2d at 418 (citing T.C.A. § 55–10–408(b)).

The Appellant contends that, "calculating from the [time frames] … derived from the testimony of the officers, compliance with the twenty-minute observation period [required by *Sensing* ] was not established." The Appellant specifically focuses on Officer Hill's testimony at trial that he began his observation after calling dispatch to request a DUI officer at 10:59 p.m. and that upon Officer Woodfin's arrival at approximately 11:10 p.m., Officer Hill gave a hand signal indicating that he required three additional minutes of observation. The Appellant asserts that, adding three minutes to the observation period, and factoring in an additional three to four minutes of observation by the officers after the Appellant was escorted to Officer Woodfin's vehicle, the time spent observing the Appellant prior to the test was, at most, only seventeen or eighteen minutes.

In response, the State correctly notes, "[the Appellant] concedes that the time between 10:59 p.m. when Officer Hill began observing the Appellant and called the dispatcher and the time that the breathalyzer was administered at 11:22 p.m. appeared to show that the test was conducted after twenty minutes of observation." Accordingly, the State argues that the evidence does not preponderate against the trial court's determination, which is otherwise presumed correct, that the *Sensing* requirements were satisfied.

In denying the Appellant's motion for new trial on this issue, the trial court stated: "The testimony of Officers Hill and Woodfin satisfactorily established that the twenty (20) minute observation period was followed. Although there was some documentary evidence form [sic] which one could argue to the contrary, the Court is satisfied that the observation period was met."

The record contains a dispatch call history document, which was admitted as an exhibit at trial, indicating that Officer Woodfin was dispatched at 10:59 p.m. and that he arrived on the scene at 11:10 p.m. Also within the record is a copy of the receipt that printed from the breath testing instrument demonstrating that the breath alcohol test of the Appellant began at 11:22 p.m. and was completed at 11:24 p.m. These times are supported by the testimony of Officers Hill and Woodfin. We presume correct the trial court's determination that the twenty-minute observation period required by *Sensing* was satisfied, and because the evidence does not preponderate against this finding, we conclude that the Appellant is not entitled to relief on this issue.

### III. Sufficiency of the Evidence

The Appellant argues that the evidence presented by the State was legally insufficient to convict him for driving under the influence. In considering this issue, we apply the rule that, where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also* Tenn. R.App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn.Crim.App.1987). This court will not

reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

It is unlawful for any person to drive or to be in physical control of an automobile on any of the public roads and highways of the state while under the influence of an intoxicant. T.C.A. § 55–10–401(a)(1) (2003). The Appellant admitted at trial, and to Officer Hill on the evening at issue, that he had been drinking gin at a friend's house. Both Officers Hill and Woodfin testified that they detected the odor of alcohol on the Appellant. Officer Hill testified that the Appellant's eyes were bloodshot, that his speech was slurred, and that he fumbled excessively with his wallet when he was asked to produce his driver's license. Additionally, Officer Hill testified that the Appellant failed the "walk and turn" field sobriety test and that when Hill requested the Appellant to perform the "one-leg stand" test, the Appellant only laughed, refused, and asked to be allowed to go home. Officer Woodfin testified that the Appellant appeared to be unsteady on his feet as he was escorted to Woodfin's vehicle for administration of the breath alcohol test. Viewing the evidence in the light most favorable to the State, we conclude that the evidence presented was more than sufficient to support the Appellant's conviction for driving under the influence. Accordingly, this issue is without merit.

### IV. Sentencing

Finally, the Appellant contends that the sentence imposed for his conviction for driving under the influence, second offense, was excessive. When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the

record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40–35–401(d) (2006). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40–35–401(d) (2006), Sentencing Comm'n Comments. In conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the defendant on his or her own behalf; and (7) the potential for rehabilitation or treatment. *See* T.C.A. § 40–35–210 (2006); *State v. Taylor,* 63 S.W.3d 400, 411 (Tenn. Crim.App.2001).

█ DUI, second offense, is a class A misdemeanor. Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40–35–302 (Supp.2004), which provides, in part, that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer,* 902 S.W.2d 391, 394 (Tenn.1995). Unlike felony sentencing, defendants are not entitled to a presumptive minimum sentence in misdemeanor sentencing. *State v. Creasy,* 885 S.W.2d 829, 832 (Tenn.Crim.App.1994).

Our legislature has provided that a defendant convicted of second offense DUI "shall be confined in the county jail or workhouse for not less than forty-five (45) days nor more than eleven (11) months and twenty-nine (29) days." T.C.A. § 55–10–403(a)(1) (2003). Additionally, the statute provides that, after a conviction for DUI, second offense, "a judge may sentence such person to participate in a court approved alcohol or drug treatment program." *Id.* In effect, the DUI statute mandates a maximum sentence for a DUI conviction, with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended. *State v. Combs,* 945 S.W.2d 770, 774 (Tenn.Crim.App.1996).

The Appellant specifically argues that the trial court erred in sentencing him to serve ninety days in jail. At the sentencing hearing, the trial court noted the Appellant's "serious drinking problem." The court expressed concern with the excessive nature of the Appellant's breath alcohol concentration (BAC) test results, .27 percent, which was more than three times above the proscribed limit of the DUI statute. In addition, the court observed that six months prior to this offense, the Appellant had "registered quite high as well" on a BAC test which was later dismissed based upon an invalid stop. The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of term to be imposed. T.C.A. § 40–35–103(5) (2006). Moreover, our high court has held that "a DUI offender can be sentenced to serve the entire eleven month and twenty-nine day sentence imposed as the maximum punishment for DUI so long as the imposition of that sentence is in accordance with the principles and purposes of the Criminal Sentencing Reform Act of 1989." *Palmer,* 902 S.W.2d at 394. We conclude

that the sentence imposed by the trial court is neither excessive nor inconsistent with sentencing principles, and we perceive no error in the trial court's suspension of all but ninety days of the Appellant's sentence in this case. Accordingly, the sentence is affirmed in all respects.

## CONCLUSION

Based upon the foregoing, the judgment of the Davidson County Criminal Court is affirmed.