FILED

04/22/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 28, 2023 at Knoxville

## STATE OF TENNESSEE v. SHANE DWIGHT BINGHAM

**Appeal from the Criminal Court for Davidson County**
**No. 2020-A-686    Mark J. Fishburn, Judge**

_____

### No. M2022-01644-CCA-R3-CD

_____

The Defendant, Shane Dwight Bingham, appeals from his convictions for attempted second degree murder, aggravated assault, and employment of a firearm during the commission of a dangerous felony. On appeal, the Defendant argues that (1) the evidence was insufficient to establish his identity as the perpetrator of the offenses; (2) the trial court erred by admitting evidence of the Defendant's flight from police; and (3) the trial court erred by instructing the jury on flight. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Timothy Carter, Nashville, Tennessee, for the appellant, Shane Dwight Bingham.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Vince Wyatt and Luis Casas, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

The victim, Kewayne Covington, was involved in a car crash near his Nashville home as he returned from work on the evening of June 10, 2019. As the victim exited his car outside his home to assess the damage, an assailant punched the victim and then shot him nine times. The Defendant was identified as a suspect and was subsequently indicted

and charged with attempted first degree murder, aggravated assault, and employing a firearm during the commission of or attempt to commit a dangerous felony. Tenn. Code Ann. §§ 39-12-101, -13-102, and -17-1324.

Months prior to trial, the Defendant filed a motion in limine pursuant to Tennessee Rule of Evidence 404(b), moving the trial court "to prohibit the State from introducing any evidence that the [D]efendant committed specific prior bad acts." The Defendant did not reference any specific evidence in his motion.

The trial court addressed the Defendant's motion prior to jury selection on April 18, 2022, the first day of trial. After addressing an issue concerning a prior domestic violence report involving the Defendant, the trial court asked the parties if there were any other Rule 404(b) issues to address. The Defendant had none. The State, however, indicated that it intended to introduce proof of an incident from October 2019, about four months after the shooting, where the Defendant ran from police as they attempted to take him into custody. The State argued that such proof "would be admissible and would go to the flight instruction and things of that nature." The following exchange then occurred:

> [Defense counsel]: And I understood that they were going to try to introduce that as it relates to flight. I think we would make objections at the appropriate time on that just to see what the proof looks like. With that being said, again, one of those issues. He's actually been indicted on that offense. So I would like to make sure that we –
>
> [Trial court]: Yeah. Don't get into the fact that he –
>
> [Defense counsel]: – proceed with caution.
>
> [Trial court]: Yeah. Yeah. Don't let – bring to the Jury's attention that he has another case pending, but obviously you can get into the circumstances surrounding his arrest.
>
> [Prosecutor]: Thank you, Judge.

Defense counsel offered no objection at this time, nor did he request a jury-out hearing concerning the incident pursuant to Rule 404(b).

At trial, the victim testified that he "knew of" the Defendant as being the boyfriend of Dakayla Harris, who lived two doors down from the victim on Allenwood Drive. The first time he ever saw the Defendant, however, was on the day of the shooting, June 10, 2019, when the victim was on his way to work and the Defendant was outside Ms. Harris' home. Later that night, the victim was returning home in his yellow Mustang following his evening shift at a local restaurant. Around 11:45 p.m., as the victim approached his

home on Allenwood Drive, another vehicle struck the back of his car. The victim pulled into his driveway, which was two driveways down from the crash, and attempted to exit his vehicle to inspect the damage. He stated that the Defendant, whom the victim identified in court, approached him, hit him in the jaw, and shot him multiple times. Six of the shots directly hit the victim's body and three grazed him. The victim surmised that the Defendant had emptied the magazine of the weapon because the victim heard the "gun click a couple more times, but there [were] no bullets in there to fire[.]" Following the shooting, the Defendant returned to his vehicle and drove away.

The victim was transported to Vanderbilt Medical Center for treatment of gunshot wounds to his left arm, right leg, spine, and penis. As a result of the attack, he had metal rods and bullet fragments in his arm and leg and an irremovable bullet in his spine. The victim had to relearn how to walk following the shooting.

Officers with the Metropolitan Nashville Police Department ("MNPD") responded to the scene on Allenwood Drive, where they collected eight cartridge casings, a projectile, and broken automobile parts from the street. The cartridge casings were aligned in a linear fashion on the ground next to the victim's car. No weapon was located at the scene. MNPD civilian crime scene investigator John Terry testified that he used the part number on one of the automobile parts to determine that it belonged to a General Motors product, which could have included "anything from a Silverado to a Yukon to a Suburban," from model years 1992 through 1999. A witness at the scene informed MNPD Detective Jesse Holt that he had observed an "older model black or dark gray SUV Suburban type vehicle with tints" speeding away from the scene.

The victim testified that Det. Holt interviewed him at the hospital the day after the attack. During that interview, the victim was on medication, in a lot of pain, and not fully alert. The victim acknowledged he initially told Det. Holt that he had not seen his shooter, only the car that the shooter was driving, which he described as an older model maroon SUV, "like a Suburban." He also acknowledged having told Det. Holt that he had never seen the Defendant before, despite his prior testimony that he had seen him earlier that day. As his conversation with Det. Holt continued, however, the victim testified that he did his best to identify the shooter, telling Det. Holt that he remembered the name "Shane" and that Shane was Ms. Harris' boyfriend. The victim later acknowledged in his testimony that he was unable to provide any part of the Defendant's name to Det. Holt.

A day or two after Det. Holt's interview, the victim identified the Defendant as the shooter from a photographic lineup provided by police. At trial, the victim testified that he was certain of his in-court identification of the Defendant and that he had also identified the Defendant at the preliminary hearing and in the photographic lineup.

Det. Holt testified regarding his initial interview with the victim and stated that the victim had provided helpful information, which included a description of the shooter and

the name of the shooter's girlfriend, Ms. Harris. Det. Holt stated that the victim was unable to provide the name of the shooter. Det. Holt focused his investigation on the Defendant after locating the Defendant's name on a prior police report associated with Ms. Harris. The State introduced a birth certificate showing that the Defendant was the father of Ms. Harris' child and listing an Allenwood Drive address for Ms. Harris.

MNPD Sergeant Tyler Conrads testified that he was a detective in 2019, and around June 13 of that year, he led MNPD's efforts to locate the Defendant. Sgt. Conrads testified that he looked for the Defendant about three to four days a week for several months. He searched social media, received tips, conducted "knock and talks" with the Defendant's family members, and attempted to surveil the Defendant, all to no avail.

On October 9, 2019, however, Sgt. Conrads and other officers set up surveillance on a red pickup truck that was registered to the Defendant. As Sgt. Conrads surveilled this truck from afar in an unmarked car, he saw the Defendant in his sideview mirror working on a different truck directly behind Sgt. Conrads' vehicle. Sgt. Conrads notified other detectives, and they devised a plan to apprehend the Defendant. As two cruisers approached with blue-lights activated, Sgt. Conrads exited his vehicle, wearing a raid vest emblazoned with "Metro Police," and approached the Defendant on foot. Upon seeing the police, the Defendant jumped into the driver's seat of a gray Tahoe parked behind the vehicle under repair and started the engine. Sgt. Conrads knocked on the Defendant's window and gave him several commands to exit, but the Defendant drove away, striking the vehicle the Defendant had been working on. The Defendant attempted to drive the Tahoe behind the house that he had been parked in front of, but a fence blocked his path. As the police attempted to block the Defendant in, the Defendant drove through two or three yards to access a gully. The Defendant drove through the gully, through another backyard, and was able to exit the neighborhood without being apprehended.

At this point in Sgt. Conrads' testimony, defense counsel asked for a bench conference where the following exchange occurred:

> [Defense counsel]: Sorry. We had addressed this pretrial. This is the evading arrest indictment that he's got as well and all that. Obviously, they've been careful not discussing the other indictments, but you know, we've talked about vandalism and various other things. So I'd just reiterate my objection for the record as to this testimony.
>
> [Trial court]: All right.
>
> [Defense counsel]: And it's bringing in a lot of extrinsic vandalism crimes, damage to people's homes and stuff, which I was aware that it would probably bring in –

[Trial court]: I note the objection, but I mean, he's not testifying in a way that's yes, he's being arrested for any of this. And I don't think the average Juror over there is thinking gosh, he's committing all these other crimes. So I overrule, and I think it goes to flight.

[Defense counsel]: Right. Obviously, I just wanted to put that on the record. Thank you.

Sgt. Conrads' testimony resumed following the bench conference, and he explained that the police were unable to apprehend the Defendant on that day, even with the assistance of a helicopter. The police did, however, obtain the license plate for the Defendant's gray Tahoe and learned that it was a 1999 model.

Thereupon, the State rested.

During the defense's case-in-chief, Buddy Franklin Mitchell, II, testified that he was retained by the Defendant as a private investigator. Mr. Mitchell reviewed the discovery in the Defendant's case. He said that he was a former police officer and had experience interviewing witnesses and conducting photographic lineups. The photographic lineup in the Defendant's case was in black and white, but Mr. Mitchell said that the lineups he conducted were always in color. He had never seen any photographic lineups using black and white photos.

On this proof, the jury convicted the Defendant of the lesser included offense of attempted second degree murder, *see* Tennessee Code Annotated section 39-13-210, and the charged offenses of aggravated assault and employing a firearm during the commission of or attempt to commit a dangerous felony. Following a sentencing hearing, the trial court imposed an effective twenty-year sentence for these convictions. The trial court denied the Defendant's motion for a new trial but ordered an amended judgment form to reflect that the aggravated assault conviction merged with the attempted second degree murder conviction. This timely appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to establish his identity as the perpetrator of the offenses. Specifically, the Defendant argues that the victim's in-court and photographic lineup identifications of the Defendant was "suspect." The State argues that, on the contrary, the evidence was sufficient to support a jury's conclusion that the Defendant committed the charged offenses beyond a reasonable doubt. We agree with the State.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The law provides this deference to the jury's verdict because

> [t]he jury and the [t]rial [j]udge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony. The human atmosphere of the trial and the totality of the evidence before the court below cannot be reproduced in an appellate court, which sees only the written record.

*Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963) (internal quotations and citations omitted). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and to all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

The identity of the perpetrator is an essential element of any crime. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995) (citing *White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975)). Identity is a question of fact for the jury's determination upon consideration of all competent proof. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). As with any sufficiency analysis, the State is entitled to the strongest legitimate view of the evidence concerning identity

contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *See id.* (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)); *see also State v. Miller*, 638 S.W.3d 136, 158-59 (Tenn. 2021).

In this case, the jury heard proof that the Defendant was the boyfriend of Ms. Harris, who lived two doors down from the victim. Although the victim had not previously met the Defendant, the victim had seen the Defendant outside of Ms. Harris' house on the day of the shooting. The proximity of Ms. Harris' house to the victim's and the discovery of the car part at the crash scene are corroborative of the victim's account of the location of the car crash that preceded the shooting and the Defendant's involvement in that crash.

Moreover, the victim identified the Defendant as the shooter on multiple occasions: (1) during his initial interview with Det. Holt in the hospital, the victim stated that Ms. Harris' boyfriend shot him; (2) a few days later while still in the hospital, the victim identified the Defendant in a photographic lineup; (3) the victim identified the Defendant at the preliminary hearing; and (4) the victim identified the Defendant in court during trial. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). The police were unable to locate the Defendant for months after the shooting, and when they did, he fled. *See Pulley v. State*, 506 S.W.2d 164, 169 (Tenn. Crim. App. 1973) ("Flight to avoid arrest or prosecution may warrant an inference of guilt, a consciousness of guilt, in connection with other circumstances and in the absence of an explanation of the reasons or motives that prompted it."). He did so in a vehicle that roughly matched the description of the vehicle at the scene of the shooting as provided by the victim and another witness.

While the Defendant argues that the victim's identification was invalid due to certain inconsistencies and inadequacies, "[i]nconsistency, inaccuracy[,] and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony." *Radley*, 29 S.W.3d at 537. The jury saw the victim face-to-face and accredited his identification of the Defendant, even in light of the points made on cross-examination of the victim and during the defense's proof and argument, as was its province. The proof was sufficient to establish the Defendant's identity as the perpetrator.

As part of his sufficiency argument, the Defendant attempts to claim that the victim's identification in the photographic lineup should have been suppressed as the lineup was "unnecessarily suggestive." Any challenge to the admission of the photographic lineup is waived for multiple reasons. First, the Defendant did not file a pretrial motion to suppress the lineup; second, the Defendant did not object to the lineup's admission at trial; and third, the Defendant did not preserve this issue in his motion for a new trial. *See* Tenn. R. App. P. 3(e), 36(a); Tenn. R. Crim. P. 12(b)(2)(C); *State v. Wilson*,

611 S.W.2d 843, 846 (Tenn. Crim. App. 1980). Additionally, the Defendant did not delineate a suppression claim as an issue presented for review in his appellate brief. *See* Tenn. R. App. P. 27(a)(4).

Therefore, we address the Defendant's arguments regarding the suggestiveness of the photographic lineup only to the extent that they bear on our analysis of the sufficiency of the evidence, an issue that is properly presented for our review. We include the admission of the photographic lineup in our sufficiency analysis, notwithstanding the Defendant's argument that it should have been suppressed at trial. *See State v. McLawhorn*, 636 S.W.3d 210, 237 (Tenn. Crim. App. 2020) (noting that "we evaluate the sufficiency of the evidence in light of all of the evidence presented to the jury, including the improperly admitted evidence").

With these principles in mind, we conclude that any arguments the Defendant makes on appeal regarding the reliability of the victim's identifications were resolved by the jury in favor of the State. The Defendant cross-examined the victim extensively regarding the lineup identification and even presented proof in his case-in-chief regarding alleged deficiencies in the lineup procedure. Nevertheless, the jury accredited the victim's multiple identifications of the Defendant as the perpetrator. *See Radley*, 29 S.W.3d at 537. The Defendant is not entitled to relief on this issue.

### B. Evidence of the Defendant's Flight

The Defendant argues that the trial court should have excluded evidence of his flight pursuant to Tennessee Rule of Evidence 404(b). The Defendant contends that exclusion was appropriate because the Defendant "had been aware of outstanding warrants for [d]omestic [a]ssault." The State argues that the Defendant waived this claim by failing to request a Rule 404(b) hearing at trial. We agree with the State.

The admission of evidence of other bad acts by an individual is governed by Tennessee Rule of Evidence 404(b). Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). Such evidence may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

(1) The court *upon request* must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b) (emphasis added). "Other purposes" include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). The argument that evidence should have been excluded under Rule 404(b) is waived when a defendant fails to request a 404(b) hearing. *State v. Gunn*, No. W2016-00338-CCA-R3-CD, 2017 WL 4861664, at *12 (Tenn. Crim. App. Oct. 26, 2017) (citing *State v. Jones*, 151 S.W.3d 494, 498 n.3 (Tenn. 2004) (declining to consider a Rule 404(b) claim where the defendant failed to request a 404(b) hearing)).

Prior to trial, defense counsel indicated that he "understood" that the State intended to introduce proof of the Defendant's flight but informed the trial court, "I think we would make objections at the appropriate time on that just to see what the proof looks like." At trial, Sgt. Conrads testified at length and in great detail, with no objection by the Defendant, regarding the Defendant's flight from police on October 9, 2019. As Sgt. Conrads neared the end of his direct examination testimony, defense counsel informed the trial court, "I'd just reiterate my objection for the record as to this testimony."

Under these circumstances, the Defendant has waived his Rule 404(b) issue for the purposes of appeal. While the Defendant filed a generic Rule 404(b) motion pretrial, when confronted with the specific issue of flight immediately before trial, the Defendant deferred making an objection until the "appropriate time" in order "to see what the proof looks like." Therefore, the Defendant could not "reiterate" an objection near the end of Sgt. Conrads' testimony, as the objection had never been lodged in the first instance. *See* Tenn. R. Crim. P. 103(a)(1) (requiring that objections be timely and state "the specific ground of objection"). Further, the Defendant's "reiteration" near the end of Sgt. Conrads' testimony was untimely, as the jury had already heard in great detail almost the entire account of the Defendant's flight at that point. *See State v. Copenny*, 888 S.W.2d 450, 456 (Tenn. Crim. App. 1993) (finding waiver of a Rule 404(b) issue where the defendant failed to make a timely objection); *see also* Tenn. R. App. P. 36(a) (relief not required to a party "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Finally, as the Defendant's "reiteration" did not qualify as a proper, timely objection, it certainly did not qualify as a request for a jury-out hearing pursuant to Rule 404(b). For these reasons, the Defendant has waived appellate consideration of this issue.

C.     Flight Instruction

The Defendant argues that the trial court erred in instructing the jury on flight.  In support of this argument, the Defendant restates his contention that evidence of flight should have been excluded at trial.  The State argues that sufficient evidence supported the instruction.  We agree with the State.

The United States Constitution and the Tennessee Constitution guarantee a right to trial by jury.  U.S. Const. amend. VI; Tenn. Const. art. I, § 6.  "This right encompasses an entitlement to 'a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions.'"  *State v. Fayne*, 451 S.W.3d 362, 373 (Tenn. 2014) (quoting *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)).  The trial court is tasked with providing this "complete charge" to the jury.  *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)).  The jury instructions must correctly, fully, and fairly set forth the applicable law.  *State v. Brooks*, 277 S.W.3d 407, 412 (Tenn. Crim. App. 2008).  The instructions must be reviewed in their entirety rather than examining individual phrases in isolation.  *Id*.  Because challenges to a trial court's jury instructions are a mixed question of law and fact, our review is de novo with no presumption of correctness.  *Fayne*, 451 S.W.3d at 373.

"Flight to avoid arrest or prosecution may warrant an inference of guilt, a consciousness of guilt, in connection with other circumstances and in the absence of an explanation of the reasons or motives that prompted it."  *Pulley v. State*, 506 S.W.2d 164, 169 (Tenn. Crim. App. 1973) (citing *Rogers v. State*, 455 S.W.2d 182 (Tenn. Crim. App. 1970) and 1 Wharton's Criminal Evidence (12th ed.) §§ 139, 205).  "In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction."  *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004) (appendix).  Sufficient evidence supporting such instruction requires "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community."  *State v. Payton*, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989) (quoting *Rogers*, 455 S.W.2d at 187).  "The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction."  *Rogers*, 455 S.W.2d at 187 (quoting 22A C.J.S. Criminal Law § 625).  "Evidence of flight to avoid arrest may be rebutted by a credible explanation of some other motive other than guilt, but the conclusion to be drawn from such evidence is for the jury upon proper instructions from the trial court."  *Hall v. State*, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979).

The trial court here instructed the jury on flight as follows:

The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of

guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that [the Defendant] fled is a question for your determination.

The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

If the flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.

Whether there was flight by [the Defendant], the reasons for it, and the weight to be given to it, are questions for you to determine.

*See* 7 T.P.I.—Criminal 42.18 (26th ed. 2022). This pattern instruction is a correct statement of the applicable law and has been previously cited with approval by our courts. *Berry*, 141 S.W.3d at 588.

On appeal, the Defendant does not argue that the proof at trial was insufficient to warrant a flight instruction. Rather, the Defendant argues that the proof supporting such instruction should have been excluded pursuant to Tennessee Rule of Evidence 404(b). As we have concluded above, however, the Defendant waived his Rule 404(b) challenge to the admission of Sgt. Conrads' testimony by failing to timely request a jury-out hearing. The trial court correctly instructed the jury on flight based upon the evidence admitted at trial, which was more than sufficient to warrant the instruction.

The Defendant also argues that Sgt. Conrads' testimony should have been excluded because the Defendant's flight was attributable to the fact that he knew there was a warrant for his arrest for domestic assault. This circumstance, the Defendant argues, placed him in a situation at trial "where he would either need to reveal to the jury a violent allegation of assaulting his girlfriend, or to allow the [j]ury to speculate on the reasons."

This argument fails because, again, it supports his contention that Sgt. Conrads' testimony should have been excluded and does not speak to the propriety of the trial court's

decision to instruct the jury based upon the admitted evidence. On the former point, the Defendant did not raise his domestic assault warrants as a basis for excluding Sgt. Conrads' testimony at trial; the record reflects that this theory was first discussed at the hearing on the motion for new trial. If the Defendant wished to raise the existence of a domestic violence warrant as a ground for excluding Sgt. Conrads' testimony, he should have brought this to the trial court's attention either during their pretrial discussions or, at the latest, prior to Sgt. Conrads' testimony. *See* Tenn. R. Crim. App. 36(a). In any event, "[a] flight instruction is not prohibited when there are multiple motives for flight because to determine otherwise would prevent a flight instruction when a defendant evades arrest for numerous crimes." *Berry*, 141 S.W.3d at 589. The Defendant is not entitled to relief.

## III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
KYLE A. HIXSON, JUDGE